UNITED MFG. & SERVICE CO. (now by change of name Unilectric, Inc.), Plaintiff,

v.

HOLWIN CORPORATION, Defendant.

No. 49 C 1932.

United States District Court
N. D. Illinois, E. D.
Aug. 2, 1956.

See also D.C., 113 F.R.D. 510.

Ira Milton Jones, Milwaukee, Wis., Lederer, Livingston, Kahn & Adsit, Frank H. Marks, Chicago, Ill., for plaintiff.

James R. McKnight, Robert C. Comstock, Chicago, Ill., for defendant.

KNOCH, District Judge.

Plaintiff filed an action for a declaratory judgment that a refrigerator light socket which plaintiff now manufactures and sells infringes no claim of defendant's letters patent.

Defendant counterclaimed for royalties under a license agreement between plaintiff and defendant on the ground that the said socket is made in accordance with defendant's patent and does infringe it.

Plaintiff also sought to have defendant's patent declared void ab initio. The United States Circuit Court of Appeals, 7th Circuit, United Mfg. & Service Co. v. Holwin Corp., 1951, 187 F.2d 902, held that the license between plaintiff and defendant had not been repudiated as claimed by plaintiff. Plaintiff, as licensee, was, therefore, estopped to deny the validity of the patent. Both parties pleaded causes of action for unfair competition which have been dropped out of the case.

The case came on for hearing before the Court on the pleadings and the evidence, consisting of oral testimony, documentary proofs, and physical exhibits. Witnesses were called by the respective parties, whose testimony was transcribed in the record. The Court has had the benefit of argument of counsel on briefs, has weighed carefully the arguments presented and considered the authorities advanced by respective counsel in support of their respective claims.

Upon a consideration of the whole case, the Court makes the following:

### Findings of Fact.

1. Plaintiff is a Wisconsin corporation having an office and place of business at Milwaukee, Wisconsin.

2. Defendant and counterclaimant is an Illinois corporation having an office and place of business in Chicago, Illinois.

3. Defendant is now and has been since prior to July 15, 1949, the owner of United States Letters Patent to Holloway, No. 2,460,636, issued February 1, 1949, for Improvement in Self-Sealing Electric Light Sockets for Refrigerator Panels.

4. Defendant granted a license on said patent No. 2,460,636 to plaintiff on July 20, 1949.

5. Plaintiff made and sold self-sealing electric light sockets for refrigerator panels under its license agreement with defendant and paid royalties thereunder until September 16, 1949.

6. The license agreement between defendant and plaintiff has been since its execution, and is now, in existence and in full force and effect.

7. Defendant's said patent No. 2,460,636 provided for the first time an electric light socket for a refrigerator panel having a groove to be fitted without need of a tool into a non-circular opening in the panel and by means of flanges on opposite sides of the groove to hold the socket in position against turning, with a moisture proof seal.

8. Defendant's socket made in accordance with patent No. 2,460,636 was accepted by the trade and enjoyed commercial success.

9. The sockets made and sold by plaintiff as shown by plaintiff's Exhibit A–1 are admitted by plaintiff as coming within the scope of the claims of defendant's patent aforesaid and the license agreement between the parties.

10. On September 16, 1949, plaintiff began to manufacture its contemporary socket, represented by plaintiff's Exhibit B–1 and defendant's Exhibit O. Plaintiff has manufactured the contemporary socket continuously and exclusively since that date.

11. Plaintiff's contemporary socket differs from that shown in plaintiff's Exhibit A–1 in that the first has two opposing flanges, each of which extends continuously around the body of the socket and which cooperate to define a single groove extending around the socket. It is defendant's contention that the contemporary socket has not one, but two, flanges cooperating with a single opposed flange to define the groove. The drawings of the Hoard design patent No. D–156,730 of January 3, 1950, do show what appear to be a pair of flanges on one side of the groove. However, the physical exhibits, plaintiff's Exhibit B–1 and defendant's Exhibit O, do not bear out this appearance. The socket shown in plaintiff's Exhibit A–1 has one continuous flange extending uninterruptedly around the socket and a plurality of shorter flanges cooperating therewith to define several short, discontinuous grooves spaced at intervals around the socket.

12. Plaintiff's contemporary socket is admittedly the same in function, operation and result as the socket shown in plaintiff's Exhibit A–1.

13. Plaintiff's contemporary socket is the equivalent in construction, function, operation and result of plaintiff's socket as shown in Exhibit A–1. There are no patentable differences between the said sockets.

14. Defendant concedes that its claim No. 3 is the broadest claim of the defendant's patent aforesaid, and that its counterclaim must be dismissed if the plaintiff's contemporary socket does not come within the scope of claim No. 3.

15. Claim No. 3 of the defendant's patent aforesaid describes a socket with one continuous flange and "a plurality of shorter flanges extending partially around the outside" of the socket housing.

16. When the application for the defendant's patent aforesaid was originally filed, it included an original claim No. 4 which called for "a plurality of oppositely disposed flanges spaced slightly from each other on the outer surface of said rubber housing, * * *" It is plaintiff's contention that this language would read on plaintiff's contemporary socket.

17. Plaintiff argued that defendant was resorting to the doctrine of

equivalents to recapture claims surrendered by amendment. File wrapper estoppel arises as to claims amended or cancelled to overcome rejection. In the instant case, the file wrapper shows that the patent officer originally rejected all of original claims No. 2, No. 3 and No. 4 under one heading, on the theory, later apparently abandoned, that they were the full equivalent of what was found in Welch and Langdon wherein the spaced flanges were said to function as did the plurality of flanges in the defendant's patent aforesaid. No distinction was made by the examiner between claim No. 3 (later re-written) and claim No. 4 (later cancelled). It is plaintiff's position that claim No. 4 which did read on plaintiff's contemporary socket was cancelled to overcome rejection and that defendant was thus estopped to claim infringement. However, the claims as re-written and allowed still contained the plurality of flanges to which the examiner initially objected. The patentee did not overcome the rejection by restricting the claims to plural flanges but by explanation of the differences between the subject invention and the prior art. The Court finds that file wrapper estoppel does not apply in this case.

18. The contemporary sockets made and sold by plaintiff, as shown by defendant's Exhibit O and plaintiff's Exhibit B–1, do come within the scope of claim No. 3 of defendant's patent No. 2,-460,636 and the license agreement between the parties.

19. During the trial of this action plaintiff introduced evidence of prior art which was considered solely on the question of limiting the claims of the defendant's patent aforesaid. Consideration of the prior art did not indicate that defendant's claims were so limited as to exclude the contemporary socket of plaintiff.

## Conclusions of Law.

1. This Court has jurisdiction of this case under the patent laws of the United States and because of diversity of citizenship of the parties.

2. Defendant's patent No. 2,460,636 has been presumed valid. As plaintiff is a licensee of defendant under defendant's patent aforesaid, plaintiff is estopped to contest the validity of said patent. Plaintiff's assertions of fraud constitute an attempt to contest the validity of the patent.

3. Plaintiff's contemporary socket as shown by plaintiff's Exhibit B–1 and defendant's Exhibit O, and plaintiff's socket as shown in plaintiff's Exhibit A–1 all infringe claim No. 3 of defendant's patent aforesaid and come within the terms of the license agreement between the parties.

4. Claim No. 3 of the defendant's patent aforesaid is not limited by any of the prior art, offered by plaintiff to show the state of the art, so as to exclude the contemporary socket of plaintiff.

5. Claim No. 3 of the defendant's patent aforesaid was allowed by the Patent Office over the prior patents to Welch and Langdon urged by the plaintiff.

6. There is no file wrapper estoppel limiting the scope of claim No. 3 of defendant's patent aforesaid.

7. Defendant is entitled to:

(a) judgment against plaintiff with interest at legal rates from the dates due for all royalties under the license agreement between the parties at the contract rate of 1¢ per socket for all sockets made and sold by plaintiff within the terms of said agreement, from September 16, 1949, to date, including such sockets as shown in plaintiff's Exhibits A–1 and B–1 and defendant's Exhibit O, and order on plaintiff to pay such royalties to defendant in the future during the life of the said license agreement in accordance with the terms thereof.

(b) referral of this cause to a Master in Chancery, to be approved by this Court, for accounting and determination of the damages suffered by defendant by reason of plaintiff's non-payment of royalties under its said license agreement with defendant.

(c) dismissal of plaintiff's complaint for declaratory judgment.

(d) award of defendant's costs and disbursements in this action.

8. All objections to introduction of evidence raised by either party, as to which the Court has not previously ruled, are hereby overruled.

An order in conformity with the foregoing may be presented to the Court within 30 days from the date hereof.