BURROUGHS WELLCOME
CO., Plaintiff,

v.

BARR LABORATORIES,
INC., Defendant,

BURROUGHS WELLCOME
CO., Plaintiff,

v.

UNITED STATES DEPARTMENT OF
HEALTH AND HUMAN SERVICES
and the National Institutes of Health,
Defendants.

Nos. 91–41–CIV–4–H, 92–117–CIV–5–H.

United States District Court,
E.D. North Carolina.
New Bern Division,
Raleigh Division.

Aug. 3, 1992.

**614**

Thomas Curnin, Cahill Gordon & Reindell, New York City, E. Anthony Figg, Rothwell, Figg, Ernst & Kurz, P.C., Washington, D.C., James G. Billings, Smith, Anderson, Blount, Dorsett, Mitchell & Jernigan, Raleigh, N.C. (Local Counsel), for plaintiff.

Myron Cohen, Cohen, Pontani, Lieberman & Pavane, New York City, Richard Friedman, Dept. of Health & Human Services, Washington, D.C., John A.J. Ward, Ward & Smith, P.A., New Bern, N.C. (Local Counsel), for defendants.

## ORDER

MALCOLM J. HOWARD, District Judge.

This matter is before the court on the motion of defendant Barr Laboratories, Inc., ("Barr"), to compel plaintiff Burroughs Wellcome Co. ("BW Co.") to produce discovery pursuant to Rule 37 of the Federal Rules of Civil Procedure. Barr seeks production of 357 documents withheld by BW Co. on the basis of the attorney-client and/or attorney work product privilege.[1] The parties have submitted memoranda and have presented oral arguments before the court. The court has painstakingly reviewed each document in camera and now rules on this matter.

## I.

## INTRODUCTION

Plaintiff BW Co., a manufacturer of zidovudine ("AZT"), an FDA-approved drug used in the treatment of acquired immunodeficiency syndrome ("AIDS"), instituted this patent infringement action after defendant Barr filed an Abbreviated New Drug Application with the FDA seeking approval to manufacture and market a generic drug containing AZT. At issue in the underlying litigation is the validity of several U.S. patents related to AZT owned by BW Co. The parties are now in the midst of voluminous and hotly contested discovery. The motion before the court, Barr's third motion to compel, challenges BW Co.'s assertion of the attorney-client and/or attorney work product privilege for numerous documents related to its U.S. and foreign patents.

The court will begin by stating the general principles regarding the attorney-client privilege and the attorney work product doctrine that have governed its in camera review. Next, the court will apply the gen-

---

1. BW Co.'s privilege log submitted to the court on June 29, 1992, listed 351 documents withheld on the basis of privilege. On July 27, 1992, the Court received six additional documents from BW Co. which were withheld from its most recent production of documents. The court has numbered these documents 352 through 357 sequentially according to their Bates numbers.

eral principles to the documents submitted for review. Wherever appropriate, the court has grouped together documents according to the basis for the privilege. Finally, the court has attached to this order an appendix setting forth its specific ruling for each document.

## II.

## DISCUSSION OF THE LAW

*Attorney–Client Privilege*

■ The attorney-client privilege prevents the disclosure of confidential client communications made to an attorney while seeking legal advice. The party asserting the privilege has the burden of establishing the following elements:`

(1) the asserted holder of the privilege is or sought to become a client; (2) the person to whom the communication was made (a) is the member of the bar of a court, or his subordinate and (b) in connection with this communication is acting as a lawyer; (3) the communication relates to a fact of which the attorney was informed (a) by his client (b) without the presence of strangers (c) for the purpose of securing primarily (i) an opinion of law or (ii) legal services or (iii) assistance in some legal proceeding, and not (d) for the purpose of committing a crime or tort; and (4) the privilege has been (a) claimed and (b) not waived by the client.

*United States v. Jones*, 696 F.2d 1069, 1072 (4th Cir.1982) (quoting *United States v. United Shoe Machinery Corp.*, 89 F.Supp. 357, 358–59 (D.Mass.1950)); *Republican Party of North Carolina v. Martin*, 136 F.R.D. 421, 425–26 (E.D.N.C.1991). Because the assertion of the privilege frustrates the search for truth, the privilege must be strictly construed. *Martin*, 136 F.R.D. at 426.

■ The attorney-client privilege may be asserted in patent litigation to protect communications from a client to a patent lawyer. *Knogo Corp. v. United States*, 213 U.S.P.Q. (BNA) 936 (Ct.Cl.1980). However, to be protected by the attorney-client privilege, communications from client to patent lawyer must be made both 1) with the intent that they be confidential and 2) in connection with a request for legal advice. Therefore, the following classifications of documents are not protected by the attorney-client privilege:

1) Client authorizations to file applications and take other steps necessary to obtain registration;

2) Papers submitted to the Patent Office;

3) Compendiums of filing fees and requirements in the United States and foreign countries for various types of applications;

4) Resumes of applications filed and registrations obtained or rejected (including dates and file or registration numbers);

5) Technical information communicated to the attorney but not calling for a legal opinion or interpretation and meant primarily for aid in completing patent applications;

6) Business advice such as that related to product marketing; and

7) Communications whose confidentiality [the client] has waived.

*Jack Winter, Inc. v. Koratron Co.*, 54 F.R.D. 44, 47 (N.D.Cal.1971).

8) Communications which pass through an attorney who acts only as a conduit for a third party;

9) Transmittal letters or acknowledgement of receipt letters devoid of legal advice or requests for such advice and disclosing no privileged matters;

10) Patent disclosures, draft patent applications, technical non-legal material related to the final patent, or studies of the prior art.

*Detection Systems, Inc. v. Pittway Corp.*, 96 F.R.D. 152, 155 (W.D.N.Y.1982) (citing *Duplan Corp. v. Deering Milliken, Inc.*, 397 F.Supp. 1146, 1168 (D.S.C.1974) and *Sneider v. Kimberly–Clark Corp.*, 91 F.R.D. 1, 5, 7 (N.D.Ill.1980)).

Guided by these general principles, the court has carefully reviewed each document in an effort to avoid an overly broad ruling that could potentially exacerbate BW Co.'s legitimate interests in the attorney-client privilege. For those communica-

tions comprised primarily of technical information, the court has made every effort to protect any communication made to an attorney for the primary purpose of obtaining legal advice or a legal opinion as to the subject matter or patentability of an invention. *Cuno, Inc. v. Pall Corp.*, 121 F.R.D. 198, 201–02 (E.D.N.Y.1988); *Hewlett–Packard Co. v. Bausch & Lomb, Inc.*, 116 F.R.D. 533, 542 (N.D.Cal.1987); *Hercules v. Exxon Corp.*, 434 F.Supp. 136, 147 (D.Del. 1977). In doing so, the court adopts the position of the court in *Knogo Corp.*, which held:

> The [patent] attorney is not a mere conduit for either the client's communications containing the technical information or the technical information itself. He does not file his client's communications with the Patent Office. He does not file transcripts of his conversations with the client regarding technical matters and then await the issuance of a patent ...

> . . . . .

> The fact that much of the technical information in one form or another finds its way into the patent application, to be made public when the patent issues, should not preclude the assertion of the privilege over the communication in which the information was disclosed to the attorney.

213 U.S.P.Q. (BNA) 936, 940 (Ct.Cl.1980)

■ Likewise, the court has extended the attorney-client privilege to prior art searches and discussions and documents related to the prior art if they contain or reflect communications made in connection with requests for legal advice or a legal opinion as to patentability. *See In re Minebea Co.*, 143 F.Supp. 494, 502, (S.D.N.Y. 1992); *FMC Corp. v. Old Dominion Brush Co.*, 229 U.S.P.Q. (BNA) 150, 1985 WL 5983 (W.D.Mo.1985).

■ Although the privilege does not extend to drafts of patent applications, *see Detection Systems*, 96 F.R.D. at 155, the privilege protects from discovery drafts of replies and responses prepared in response to questions or decisions of a patent examiner. *See Hewlett–Packard*, 116 F.R.D. at

542–43. Once the patent examiner tentatively decides to deny certain claims, the client is "in a defensive position and, in essence, in an adversary relation to the examiner." *Id*. at 543. When prepared in this context, the court finds that draft replies are "quintessentially professional advice" about how to reason persuasively before the patent examiner. *Id.*

■ However, the court concludes that the attorney-client privilege does not protect communications consisting primarily of technical information made to a patent lawyer in connection with the prosecution of a patent application that were intended to be passed on to the Patent & Trademark Office ("PTO"). *Hewlett–Packard Co. v. Bausch & Lomb, Inc.*, 116 F.R.D. at 542; *Duplan Corp. v. Deering Milliken, Inc.*, 397 F.Supp. at 1167–68. Nor has the court extended the privilege to communications made to an attorney in connection with business, rather than legal, advice.

*Communications with Foreign Patent Agents and Attorneys*

BW Co. also asserts the attorney-client privilege for communications between and among its employees, in-house counsel, outside American patent counsel, American patent agents, foreign patent attorneys, and foreign patent agents in the following countries: Australia; Austria; Canada; Denmark; Ireland; Italy; West Germany; Finland; Hungary; Israel; Korea; New Zealand; The United Kingdom; The Philippines; and Japan. In addition, the plaintiff asserts the privilege in connection with communications with foreign patent agents prosecuting patents before the European Patent Office.

■ The established rule in this circuit regarding communications with foreign patent agents is that "no communications from patent agents, whether American or foreign, are subject to an attorney-client privilege in the United States." *Duplan*, 397 F.Supp. at 1169. The application of this rule is not rigid, however. Instead, the privilege may extend to communications

with foreign patent agents related to foreign patent activities *if* the privilege would apply under the law of the foreign country and that law is not contrary to the law of this forum. *Duplan*, 397 F.Supp. at 1169; *see also Detection Systems*, 96 F.R.D. at 155.

This rule was aptly summarized in *Baxter Travenol Laboratories, Inc. v. Abbott Laboratories*, 1987 WL 12919, 1987 U.S.Dist. LEXIS 10300 (N.D.Ill. June 17, 1987), where the court stated:

> [I]f the communication is actually between the client and the foreign patent agent, and the attorney merely serves as a conduit for the information, the communication is not privileged unless under the foreign law communications between patent agents and clients are privileged. Similarly, if the communication is actually between the attorney and the foreign patent office, and the foreign patent agent merely serves as a conduit, the communication is not privileged unless direct communication between the attorney and the foreign patent office is confidential.
>
> Where the communication consists not merely of information to be passed on to the foreign patent office, but is substantive, the result is different. If the foreign patent agent was primarily a functionary of the attorney, the communication is privileged to the same extent as any communication between an attorney and a non-lawyer working under his supervision. If the foreign patent agent is engaged in the lawyering process, the communication is privileged to the same extent as any communication between co-counsel.

*Id.*, 1987 WL 12919 at p*8, 1987 U.S.Dist. LEXIS 10300 at p*19 (citations omitted).

The court has reviewed all of the communications with foreign patent attorneys and agents with the above-stated principle in mind. However, the court has strictly construed the privilege as applied to foreign patent attorneys and agents, and has resolved all doubts in favor of disclosure. The burden rests upon BW Co. to establish that, as to each country, the attorney-client privilege extends to patent attorneys and/or patent agents *and* that the communications were intended to be confidential and not merely passed on to a patent examiner. In many instances, the court has been unable to determine whether a particular individual was a patent attorney or a patent agent; for those countries where the distinction has legal significance, the court resolved all uncertainties against BW Co., the party with the burden of establishing all of the elements of the privilege.

### Attorney Work Product

▮ The work product doctrine shields from discovery any documents or tangible things prepared in anticipation of litigation and materials reflecting the mental impressions, conclusions, opinions, or legal theories of an attorney or other representative of a party. *Hickman v. Taylor*, 329 U.S. 495, 67 S.Ct. 385, 91 L.Ed. 451 (1947); Fed. R.Civ.P. 26(b)(3). Work product that does not implicate the mental impressions, conclusions, opinions, or legal theories of an attorney is discoverable only upon a showing of a "substantial need of the materials in the preparation of the party's case and that the party is unable without undue hardship to obtain the substantial equivalent of the materials by other means." Fed.R.Civ.P. 26(b)(3).

▮ Because the prosecution of a patent is usually an ex parte, non-adversarial proceeding, the materials and documents generated by an attorney in the preparation and prosecution of a patent are generally not considered to be work product. *Detection Systems*, 96 F.R.D. at 155. Nonetheless, the requirement that a document be prepared "in anticipation of litigation" can be satisfied if, at the time a document is prepared, litigation is a strong likelihood or contingency. *Burlington Indus. v. Exxon Corp.*, 65 F.R.D. 26, 42, 43 (D.Md.1974). "Work is protectible work product if the 'primary motivating purpose' behind the performance of the work was to assist in the pending or impending litigation." *Minebea*, 143 F.Supp. 494, 498, (citing *Santiago v. Miles*, 121 F.R.D. 636, 641

(W.D.N.Y.1988)). Thus, patent prosecution documents and related materials may be classified as work product if the primary purpose for their creation was for use in pending or anticipated litigation. *Id.*

For numerous documents, BW Co. asserts both the attorney-client privilege and the attorney work product privilege. If the court has found that the attorney-client privilege applies to a particular document for which attorney work product protection was also asserted, the court has not addressed the latter privilege. In all other instances, the court has addressed both privileges.

## III.

## THE COURT'S DETERMINATION

*Attorney–Client Privilege*

■ The court characterizes documents 22, 80, 81, 152, 153, 157, 180, and 298 as client authorizations to file patent applications. Thus, these documents are not privileged. The handwritten notes on document 157 are a privileged communication and should be redacted.

■ The court finds that document 173 is a summary of filed patent applications and is not privileged. However, certain portions, namely paragraphs 4, 5, and 8 contain confidential communications and should be redacted. Document 174 is a supplement to document 173 and does not reveal any confidential client communication.

■ ■ Documents 162, 163, 165, 181, 183, and 310 contain a proposed filing program consisting of a client authorization to file a patent application and a summary of related patent filings. These documents do not contain any privileged communications and are not protected from discovery.

The following documents are transmittal letters accompanying various office actions from the PTO; to the extent that such transmittals contain privileged communications, appropriate redactions are noted: 14, 35 (redact last paragraph), 36 (redact last paragraph), 39, 41 (redact paragraph 3), 42, 43 (redact last paragraph), 45, 68, 107, 109 (redact last paragraph), 116, 122, 123 (redact last paragraph), 124, 125 (redact last paragraph), 126 (redact last paragraph), 128, 129 (redact paragraph 3), 130, 131 (redact paragraph 4), 132, and 156.

Similarly, the following documents are items of correspondence that are devoid of any confidential client communication or legal advice: 301, 305, 306, 308, 312, 336 (redact text following "feline leukemia"), 339, and 353 (redact attached notes and telex).

Documents 8, 16, 27, 31, and 62 are project proposals for patent filings. The court finds that the majority of these documents address business concerns and not legal issues related to patentability. To the extent that legal advice and strategy reflecting confidential client communications is contained within these documents, they should be redacted; with that exception, these documents are not privileged.

■ Several documents for which BW Co. asserts the attorney-client privilege are minutes of project group meetings. In relation to these documents, the court reiterates that the attorney-client privilege does not protect non-legal business advice given by a lawyer; rather, the primary purpose of the communication must be to secure legal advice. *Cuno, Inc. v. Pall Corp.*, 121 F.R.D. 198, 203–04 (E.D.N.Y.1988). With this in mind, the court finds that the following documents do not contain any client communications made primarily for securing legal advice, and, therefore, are not privileged: 166, 331, 332, and 334. The following documents, although not privileged, contain privileged communications which should be redacted as indicated: documents 4, 6, 9, 15, 30, 46, 47, 61, 72, 85, and 89 (redact paragraph D, Patent Position, from the preceding documents); documents 164 and 330 (redact paragraph 6, Patents); document 167 (redact section 6, Patent Position); document 325 (redact section 6, Patents); document 326 (redact Group Patents and Agreements, Beckenham); document 327 (redact section 6, Patents); document 328 (redact section 9, Patents); document 329 (redact section 8, Patents); document 333 (redact section 10, Patents).

■ Document 147 is an internal memorandum from plaintiff's U.K. patent agents concerning internal communications problems in connection with media disclosures. The memorandum appears to be wholly unsolicited. The court finds the memorandum to be more in the nature of business advice than legal advice. Thus, document 147 is not privileged.

■ The court finds that documents 106 and 307 are not privileged because they address primarily matters of a business nature rather than legal advice. The business decision whether to pursue a patent is distinct from the legal advice concerning how to obtain the best patent protection; handling publicity and dealing with the media are typically business concerns. Likewise, the court finds that document 135, a draft press release submitted to plaintiff's legal department for review, is not privileged because it was not intended to be confidential. The attorney's marginal notes on this draft, however, reflect confidential client communications and legal advice and strategy; thus, the attorney's marginal notes must be redacted.

■ Documents 7, 86, and 309 contain information that was intended to be disclosed; thus, they are not privileged. Documents 11, 60, 98, 113, 118, 151, 169, and 182 do not reflect any confidential *client* communication made for the purpose of securing legal advice; thus, these documents are not privileged. Documents 90, 96, and 97 are notes prepared by employees of plaintiff which allegedly reveal the legal advice of counsel. The attorney-client privilege protects a *client's* communication of confidential information to an attorney. Communications from an attorney to a client are protected by the attorney-client privilege only to the extent that they reveal a client's confidential communications. *Martin,* 136 F.R.D. at 426. Therefore, the court finds that documents 90, 96, and 97 are not privileged.

■ Document 120 is the handwritten letter of plaintiff's patent attorney to an inventor requesting certain information needed to assess patentability. The attorney's request does not reflect any confidential communication of information made by the client. Therefore, document 120 is not privileged.

Document 337 is a copy of a publication written by an employee of BW Co. Although the document itself lacks the requisite confidentiality to be privileged, the author's marginal notes provided to counsel are privileged.

■ Although identified on plaintiff's inventory list as memoranda from R. Cohn to M. Garrett, documents 342 and 343 contain no identifying information: no date, no author, no recipient. The court finds that BW Co. has failed to establish a sufficient basis for the privilege; therefore, documents 342 and 343 are not privileged.

■ Documents 75, 76, 146, and 149 are marked-up drafts of an article to appear in plaintiff's company newsletter. Documents 160 and 161 are marked-up drafts of a letter to appear on the Op–Ed page of the *New York Times* under the signature of plaintiff's chief executive officer. These documents were prepared for public disclosure and no privilege can attach to them merely by having them reviewed by plaintiff's legal department. Thus, the court finds that these document are not privileged.

■ Documents 66, 140, and 141 are drafts of a declaration of Sandra Nusinoff Lehrman written by a patent agent at the request of counsel. This draft was never shown to Ms. Lehrman, was never filed with the PTO, and represents a patent strategy never adopted by BW Co. This draft was prepared by *counsel,* not by the client. Therefore, the court finds that the client did not waive any privilege to the confidential communications disclosed in the draft declaration and rules that documents 66, 140, and 141 are privileged.

Document 354 is a memorandum from plaintiff's U.K. patent agent to a group marketing staff member accompanying a copy of a one-page note entitled " 'Retrovir' Review." The note contains legal advice and reflects the legal strategy underlying plaintiff's patent position for AZT. Thus,

the court finds that document 354 is privileged.

■ The following documents are communications from client to counsel requesting legal advice; transmittal letters from counsel to client revealing client confidences and providing legal advice; communications of technical information from client to counsel, not for the purpose of preparing a patent application, but for the purpose of requesting legal advice and formulating a legal strategy: 5, 10, 12, 13, 17–21, 23–26, 28, 29, 32–34, 37, 38, 40, 44, 48–59, 63–65, 67, 69–71, 73, 74, 77–79, 82–84, 87, 88, 91–95, 99–105, 112, 114, 115, 117, 119, 121, 127, 133, 134, 136–139, 142–145, 148, 150, 154, 155, 158, 159, 168, 170–172, 175–179, 206, 271, 285, 290, 293, 297, 302–304, 311, 316, 321–324, 340, 354–357. Therefore, the court finds that these documents are privileged.

*Foreign Documents*

■ Documents 184, 185, 186, and 187 are communications between plaintiff's U.K. patent agents and an Australian patent attorney. Defendant Barr has stipulated that Australian law "accord[s] a privilege to confidential communications between lawyers, patent "attorneys" or patent agents and their clients regarding patent prosecution matters." Def.'s Reply Mem. in Support of Def.'s Third Mot. to Compel Discovery at 20 (hereinafter "Def.'s Reply Mem."). However, Barr contends that the privilege does not apply because the communications reflect information to be disclosed to the patent office and, therefore, lack the necessary confidentiality.

The court finds that documents 184 and 185 contain communications made with the intent that they be disclosed to the patent examiner without invoking the lawyering skills of the attorney. Accordingly, documents 184 and 185 are not privileged. Likewise, document 186 reflects information intended to be disclosed to the patent office, with the exception of paragraphs 5 and 6, which specifically request legal advice. Thus, document 186 is not privileged and must be produced in redacted form.

Document 187 is a communication from a foreign patent attorney to the U.K. patent agent reflecting confidential communications of the client regarding patent strategy and is protected by the attorney-client privilege.

■ Documents 188, 189, 190, 191, 192, 193, and 194 are communications between plaintiff's U.K. patent agent and its Austrian patent attorneys concerning the filing of an Austrian patent application. Plaintiff has submitted a declaration by an Austrian patent attorney stating that the attorney-client privilege in Austria applies to communications between a patent attorney and a client. *See* Pl.'s Opp. to Def.'s Third Mot. to Compel Discovery, Ex. 4 (hereinafter "Pl.'s Mem. in Opp."). Barr does not dispute the existence of the privilege, but contends that the privilege does not apply to communications from foreign clients. Def.'s Reply Mem. at 20, 21, Ex. A.

The evidence presented by the parties is not in conflict. Rather, Barr's evidence is more detailed, addressing matters beyond the scope of plaintiff's declaration. With this evidence before it, the court concludes that the plaintiff has failed to meet its burden in establishing the existence of an attorney-client privilege in Austria for communications between a patent attorney and a foreign client. Accordingly, documents 188, 189, 190, 191, 192, 193, and 194 are not privileged.

■ Documents 195, 196, 199, 200, 201, 202, 203, 204, 205, 313, 314, 347, 348, 349, 350, and 351 are communications between plaintiff's U.K. patent agent and a Canadian patent agent; documents 197 and 198 are communications between plaintiff's U.K. patent agent and its U.S. patent agent concerning the matters discussed with the Canadian patent agent. BW Co. supports its contention that Canadian law extends the attorney-client privilege to communications to a patent agent by citing two cases: *Willemijn Houdstermaatschaapij BV v. Apollo Computer, Inc.,* 707 F.Supp. 1429 (D.Del.1989) and *Mendenhall v. Barber-Greene,* 531 F.Supp. 951 (N.D.Ill.1982). In neither decision did the court examine ex-

trinsic evidence to make an independent finding regarding Canadian privilege law. Plaintiff did not submit any affidavits on the issue of Canadian privilege law.

Barr, on the other hand, has submitted an affidavit stating that communications to a Canadian patent agent are not protected by the attorney-client privilege *unless* the patent agent is also a lawyer and is acting as a lawyer at the time the communication is made. Def.'s Reply Mem. at 21, Ex. B. Based upon this evidence, the court finds that the plaintiff has not met its burden of establishing the existence of an attorney-client privilege under Canadian law for communications with a Canadian patent agent. Therefore, documents 195, 196, 199, 200, 201, 202, 203, 204, 205, 313, 314, 347, 348, 349, 350, and 351 are not privileged and must be produced.

Documents 197 and 198 apparently were withheld from production because they reflected the substance of communications with the Canadian patent agent. Because the communications to and from the Canadian patent agent are not privileged, documents 197 and 198 do not contain any privileged communications and must be produced.

Documents 207, 210, 211, 212, 213, 216, 217, 218, 220, 221, 222, 223, 224, and 315 are letters between plaintiff's U.K. patent agents and its Danish patent agents; document 209 consists of one page of typewritten notes [2] designated as "Michael Garrett's thoughts on strategies to pursue to respond to Danish Patent Office action," and an attached letter from Michael Garrett to the Danish patent agents; document 208 is a communication between plaintiff's U.K. patent agents; document 214 is an internal memorandum from a patent agent-in-training to an employee of Wellcome Denmark; document 215 is an undated legal memorandum captioned "Patents for Medicine" prepared by a Danish patent attorney; document 219 is a draft of a statement to be presented to the Danish patent

office requesting expedited patent prosecution.

Plaintiff has submitted an affidavit that indicates that an attorney-client privilege exists under the laws of Denmark for communications between a patent attorney and his client. Pl.'s Mem. in Opp., Ex. 6. However, plaintiff has failed to present any evidence that the privilege applies to the communications to patent agents as well, or that its Danish patent agents were also patent attorneys. Therefore, the court finds that communications between plaintiff's U.K. patent agents and its Danish patent agents in furtherance of the prosecution of its patents are not protected by the attorney-client privilege. Thus, documents 207, 210, 211, 212, 213, 216, 217, 218, 220, 221, 222, 223, 224, and 315 are not privileged.

With respect to document 209, the court finds that the notation "Michael Garrett's thoughts ..." is insufficient to establish that the document was prepared by Michael Garrett and reveals confidential client communications. Thus, document 209 is not privileged. Documents 208 and 214 reflect the confidential communications of the plaintiff made to its U.K. patent agent. Because the U.K. recognizes a privilege for communications between client and patent agent, documents 208 and 214 are privileged. Document 215 appears to be a general legal analysis of the Danish laws for patents related to medicine and does not contain any client communications or client confidences. Therefore, this document is not privileged and must be produced. Document 219 is a draft of a statement to be forwarded to the Danish patent office and lacks the necessary confidentiality.

Documents 234, 235, 236, and 237 are communications between plaintiff's U.K. patent agents and Finnish patent agents and attorneys. Plaintiff has submitted an affidavit showing that Finnish patent attorneys have an obligation not to reveal information received in confidence from clients while acting in their professional capacity.

---

2. The notes are written in a foreign language, presumably Danish, that the court is unable to translate, and is neither dated nor signed.

**622**

Pl.'s Mem. in Opp., Ex. 7. Plaintiff's Finnish patent attorneys are designated as members of the association of Finnish Patent Attorneys.

 The court finds that an attorney-client privilege exists under the laws of Finland for confidential communications between a client and a patent attorney. Therefore, documents 236 and 237, which contain confidential client communications, are privileged. Documents 234 and 235 reflect only the attorney's understanding of the Finnish patent laws and do not reveal any client confidences, and, thus, are not privileged.

Documents 233, 239, 240, 241, 242, 243, 244, 245, 246, 247, 248, and 249 are communications between plaintiff's U.K. patent agents and its West German patent attorney. Documents 238, 299, and 300 are internal communications between plaintiff's U.K. patent agents and other U.K. and foreign employees. By declaration, plaintiff has established the existence of a statutory privilege in West Germany for confidential communications made to, and any matters disclosed to, a patent attorney. Pl.'s Mem. in Opp., Ex. 9.

In recognition of this privilege, the following documents contain confidential client communications and are protected from discovery: 233, 239, 240, 241, 243, 244, 245, 246, 247, 248, and 249. Document 242 does not reflect any client information and, therefore, is not privileged.

Documents 238, 299, and 300 are confidential communications between in-house patent agents and attorneys and an employee of Deutsche Wellcome regarding the patentability of AZT. As such, these documents are privileged.

 Documents 250, 251, 252, 253, 254, 255, 256, 257, 258, 259, 260, and 261 are communications between plaintiff's U.K. patent agents and its Hungarian patent representative. By declaration, plaintiff submits that an Hungarian patent agent and attorney has an obligation to keep secret all facts learned in the connection with the representation of a client. The court can determine easily from the documents that the communications involve the formulation of a legal strategy of patentability under the Hungarian patent laws. Thus, the Hungarian patent attorneys are acting as more than a mere conduit between plaintiff and the Hungarian patent office. Accordingly, documents 250–261 are privileged.

Documents 262, 263, 264, 265, 266, 267, 268, 269, 341, 345, and 346 are communications between plaintiff's U.K. patent agent and its Israeli patent attorneys concerning the prosecution of plaintiff's patents in Israel. Upon reviewing the declaration of Dr. Michael Cohn and the case of *Hydroplan Engineering Ltd. v. Naan Metal Works* submitted by plaintiff, Pl.'s Mem. in Opp., Ex. 12, the court is satisfied that the attorney-client privilege applies to Israeli patent agents in the same manner as it applies to Israeli advocates who represent a client in patent matters.

With this in mind, the court finds that document 262, which appears to be a legal memorandum analyzing a particular aspect of Israeli patent law, is not privileged because it does not contain a confidential client communication. Document 344 has been designated as a letter to R. Cohn, plaintiff's Israeli patent attorney. Without a translation, this court is unable to determine whether the communication was made for the primary purpose of securing legal advice, or merely to transmit information to the Israeli patent office. Thus, document 344 is not privileged. Documents 263, 264, 265, 266, 267, 268, 269, 341, 345, and 346 reflect client confidences and the formulation of patent strategy and, thus, are privileged.

 Document 284 is an outline of arguments prepared by plaintiff's Israeli patent attorney to be presented at a hearing before the Israeli patent office. The contents of this document exemplify the heart of the lawyering process for a patent attorney. The document contains confidential client communications interwoven with legal analysis and strategy. Therefore, the court finds that this document is privileged.

■ Document 338 is a draft of an expert opinion prepared by a British patent attorney at the request of plaintiff's U.K. patent agent analyzing the patentability of plaintiff's Israeli patent application. The draft clearly reflects the legal strategy and analysis of counsel. The court finds that the Israeli attorney-client privilege extends to this document as it was created for the prosecution of plaintiff's Israeli patent application.

■ Documents 287, 288, and 289 are correspondence between plaintiff's U.K. patent agent and its Italian patent attorneys. Plaintiff has submitted a letter from an Italian attorney stating that, under Italian law, the attorney-client privilege attaches to a patent attorney's communications to and from a client. Accepting this letter as sufficient proof that the privilege exists in Italy, the court finds that documents 288 and 289 are privileged in that they contain confidential client communications related to the patentability of AZT in Italy. Document 287 is privileged, not on the basis of the Italian attorney-client privilege, but as a communication from plaintiff's patent agent to plaintiff's employee concerning the patent prosecution strategy in Italy.

Documents 225, 226, 227, 228, 229, 230, 231, and 232 are communications between plaintiff's U.K. patent agent and its Irish patent agent. Plaintiff's evidence regarding the existence of a privilege for communications by or to an Irish patent agent fails to establish the existence of the privilege. Therefore, the court finds that no patent agent-client privilege exists in Ireland. For this reason, documents 225–232 are not privileged.

Documents 270, 272, and 273 are communications from plaintiff's U.K. patent agents and its Korean patent attorneys. Plaintiff has submitted a declaration stating that the attorney-client privilege applies in Korea, and that patent attorneys shall not divulge client information *without justifiable reason.* Plaintiff has not established that a Korean patent attorney is included in the definition of "attorney" for purposes of the attorney-client privilege.

Likewise, plaintiff has not presented any evidence for this court to determine what circumstances constitute "justifiable reason" for disclosing client information. Therefore, the court finds that the plaintiff has not met its burden of establishing the existence of a patent attorney-client privilege in Korea. Accordingly, documents 270, 272, and 273 are not privileged.

■ Documents 274, 275, 276, 277, 317, 318, 319, and 320 are communications between plaintiff's U.K. patent agent and its New Zealand patent attorneys. By declaration, plaintiff has established the existence of a patent attorney-client privilege in New Zealand. Documents 274, 276, 277, 317, and 318 are protected by the patent attorney-client privilege. These five documents contain confidential client communications regarding the patentability of AZT in New Zealand.

■ Documents 275, 319, and 320 are unprivileged correspondence from the New Zealand patent attorney to plaintiff's U.K. patent agent summarizing the remarks of the New Zealand patent examiner. They do not reveal a confidential communication but rather reflect information disclosed to the patent examiner.

Documents 278, 279, 280, 281, 282, and 283 are communications from plaintiff's U.K. patent agent to its Philippine patent representative. Plaintiff has failed to establish either the existence of a privilege in the Philippines or the status of its patent representative in the Philippines as a patent attorney or patent agent. Therefore, the court finds that a patent agent/attorney-client privilege does not extend to communications with a Philippine patent representative. For this reason, documents 278, 279, 280, 281, 282, and 283 are not privileged.

Documents 292, 294, 295, and 296 are communications between plaintiff's U.K. patent agents and its Japanese patent representative. By declaration, plaintiff submits that the attorney-client privilege in Japan extends to communications between patent attorney and client. However, plaintiff has failed to establish either that

its Japanese patent representative is a patent attorney or that the privilege applies equally to both patent attorneys and patent agents. Therefore, documents 292, 294, 295, and 296 are not privileged.

■ Document 291 is a letter from plaintiff's Swiss patent attorney to its European patent attorney concerning plaintiff's European patent application. Plaintiff has submitted a declaration, Pl.'s Mem. in Opp., Ex. 20, indicating that Swiss law extends the attorney-client privilege to communications between patent agent and client. Thus, the court finds that this document is privileged.

■ Documents 286 and 352 are a memorandum and draft response from plaintiff's European patent attorney to employees concerning a communication from the European patent office about plaintiff's European patent filing. The parties agree that communications between a British patent agent and a British client concerning patent matters in that country are protected by the attorney-client privilege. Further, BW Co. submits that the privilege also extends to communications in connection with a European patent filing. Pl.'s Mem. in Opp., Ex. 22. The court finds that the attorney-client privilege extends to communications between a British patent agent and a British client concerning a European patent filing. Thus, documents 286 and 352 are protected from discovery.

*Attorney Work Product*

■ BW Co. .first asserts the attorney work product privilege for the printed results of database searches conducted at the request of counsel: documents 1 (a search conducted in the NEXIS service) and 3 (a search conducted through Dialog). Plaintiff contends that, although the documents themselves are not privileged, the compilation of documents reflects the attorney's legal theory and thought processes concerning anticipated litigation involving AZT. The court agrees with plaintiff that the compilation of search results reflects the legal strategy of counsel. The court also finds that the searches were conducted in anticipation of litigation. Thus, the at-

torney work product privilege applies to documents 1 and 3.

■ Document 2 is a notebook concerning AZT compiled by David Barry at the request of counsel. The notebook is not dated; however, plaintiff alleges that counsel requested the preparation of the notebook at a time when litigation concerning AZT was imminent. This court finds that the notebook, like the search reports, constitutes attorney work product and is shielded from discovery.

The court finds that the following documents, which are not protected by the attorney-client privilege, were prepared by an attorney, or at the direction of an attorney, in anticipation of litigation concerning the patentability of AZT: 108, 110, 111, 207, 211, 335, 337, and 339. Although documents 108, 207, 211, and 339 were created in furtherance of patent prosecution, the court finds that, at the time they were created, the possibility of AZT-related litigation was imminent and was a strong motivation behind the creation of the documents.

Documents 97, 135, and 160 were not prepared by an attorney, or one acting under the direction of an attorney. Thus, these documents are not protected attorney work product. However, as stated previously in this order, the attorney's marginal notes in document 135 are shielded from discovery by the attorney-client privilege.

The following documents were not prepared in anticipation of litigation, or for the primary purpose of being used in impending litigation, and thus are not protected by the attorney work product doctrine: 107, 109, 120, 122, 123, 124, 125, 126, 186, 215, 218, and 262.

## IV.

## CONCLUSION

The court has made every effort to conduct a thorough and complete examination of the documents. In the event that additional documents are submitted to the court for review, the same principles articulated in this order will be applied.

In accordance with the preceding findings and conclusions, the court hereby GRANTS IN PART and DENIES IN PART Barr's third motion to compel. The court further ORDERS that BW Co. produce within ten days of this order all of the documents identified in the attached Appendix as nonprivileged.

## APPENDIX

P = Attorney–Client Privilege

AWP = Attorney Work Product

NP = No Privilege

| Item | Decision | Redaction |
|------|----------|-----------|
| 1 | AWP | |
| 2 | AWP | |
| 3 | AWP | |
| 4 | NP | ¶ D |
| 5 | P | |
| 6 | NP | ¶ D |
| 7 | NP | |
| 8 | NP | |
| 9 | NP | ¶ D |
| 10 | P | |
| 11 | NP | |
| 12 | P | |
| 13 | P | |
| 14 | NP | |
| 15 | NP | ¶ D |
| 16 | NP | |
| 17 | P | |
| 18 | P | |
| 19 | P | |
| 20 | P | |
| 21 | P | |
| 22 | NP | |
| 23 | P | |
| 24 | P | |
| 25 | P | |
| 26 | P | |
| 27 | NP | |
| 28 | P | |
| 29 | P | |
| 30 | NP | ¶ D |
| 31 | NP | |
| 32 | P | |
| 33 | P | |
| 34 | P | |
| 35 | NP | last ¶ |
| 36 | NP | last ¶ |
| 37 | P | |
| 38 | P | |
| 39 | NP | |
| 40 | P | |
| 41 | NP | ¶ 3 |
| 42 | NP | |
| 43 | NP | last ¶ |
| 44 | P | |

| Item | Decision | Redaction |
|------|----------|-----------|
| 45 | NP | |
| 46 | NP | ¶ D |
| 47 | NP | ¶ D |
| 48 | P | |
| 49 | P | |
| 50 | P | |
| 51 | P | |
| 52 | P | |
| 53 | P | |
| 54 | P | |
| 55 | P | |
| 56 | P | |
| 57 | P | |
| 58 | P | |
| 59 | P | |
| 60 | NP | |
| 61 | NP | ¶ D |
| 62 | NP | |
| 63 | P | |
| 64 | P | |
| 65 | P | |
| 66 | P | |
| 67 | P | |
| 68 | NP | |
| 69 | P | |
| 70 | P | |
| 71 | P | |
| 72 | NP | ¶ D |
| 73 | P | |
| 74 | P | |
| 75 | NP | |
| 76 | NP | |
| 77 | P | |
| 78 | P | |
| 79 | P | |
| 80 | NP | |
| 81 | NP | |
| 82 | P | |
| 83 | P | |
| 84 | P | |
| 85 | NP | ¶ D |
| 86 | NP | |
| 87 | P | |
| 88 | P | |
| 89 | NP | ¶ D |
| 90 | NP | |
| 91 | P | |
| 92 | P | |
| 93 | P | |
| 94 | P | |
| 95 | P | |
| 96 | NP | |
| 97 | NP | |
| 98 | NP | |
| 99 | P | |
| 100 | P | |
| 101 | P | |
| 102 | P | |
| 103 | P | |
| 104 | P | |
| 105 | P | |

| Item | Decision | Redaction |
|---|---|---|
| 106 | NP | |
| 107 | NP | |
| 108 | AWP | |
| 109 | NP | last ¶ |
| 110 | AWP | |
| 111 | AWP | |
| 112 | P | |
| 113 | NP | |
| 114 | P | |
| 115 | P | |
| 116 | NP | |
| 117 | P | |
| 118 | NP | |
| 119 | P | |
| 120 | NP | |
| 121 | P | |
| 122 | NP | |
| 123 | NP | last ¶ |
| 124 | NP | |
| 125 | NP | last ¶ |
| 126 | NP | last ¶ |
| 127 | P | |
| 128 | NP | |
| 129 | NP | ¶ 3 |
| 130 | NP | |
| 131 | NP | ¶ 4 |
| 132 | NP | |
| 133 | P | |
| 134 | P | |
| 135 | NP | Atty's Notes |
| 136 | P | |
| 137 | P | |
| 138 | P | |
| 139 | P | |
| 140 | P | |
| 141 | P | |
| 142 | P | |
| 143 | P | |
| 144 | P | |
| 145 | P | |
| 146 | NP | |
| 147 | NP | |
| 148 | P | |
| 149 | NP | |
| 150 | P | |
| 151 | NP | |
| 152 | NP | |
| 153 | NP | |
| 154 | P | |
| 155 | P | |
| 156 | NP | |
| 157 | NP | Notes |
| 158 | P | |
| 159 | P | |
| 160 | NP | |
| 161 | NP | |
| 162 | NP | |
| 163 | NP | |
| 164 | NP | ¶ 6 |
| 165 | NP | |
| 166 | NP | |
| 167 | NP | ¶ 6 |
| 168 | P | |
| 169 | NP | |
| 170 | P | |
| 171 | P | |
| 172 | P | |
| 173 | NP | ¶ 4, 5, 8 |
| 174 | NP | |
| 175 | P | |
| 176 | P | |
| 177 | P | |
| 178 | P | |
| 179 | P | |
| 180 | NP | |
| 181 | NP | |
| 182 | NP | |
| 183 | NP | |
| 184 | NP | |
| 185 | NP | |
| 186 | NP | ¶ 5, 6 |
| 187 | P | |
| 188 | NP | |
| 189 | NP | |
| 190 | NP | |
| 191 | NP | |
| 192 | NP | |
| 193 | NP | |
| 194 | NP | |
| 195 | NP | |
| 196 | NP | |
| 197 | NP | |
| 198 | NP | |
| 199 | NP | |
| 200 | NP | |
| 201 | NP | |
| 202 | NP | |
| 203 | NP | |
| 204 | NP | |
| 205 | NP | |
| 206 | P | |
| 207 | AWP | |
| 208 | P | |
| 209 | NP | |
| 210 | NP | |
| 211 | AWP | |
| 212 | NP | |
| 213 | NP | |
| 214 | P | |
| 215 | NP | |
| 216 | NP | |
| 217 | NP | |
| 218 | NP | |
| 219 | NP | |
| 220 | NP | |
| 221 | NP | |
| 222 | NP | |
| 223 | NP | |
| 224 | NP | |
| 225 | NP | |
| 226 | NP | |

| Item | Decision | Redaction | Item | Decision | Redaction |
|------|----------|-----------|------|----------|-----------|
| | | | 287 | P | |
| | | | 288 | P | |
| | | | 289 | P | |
| | | | 290 | P | |
| 227 | NP | | 291 | P | |
| 228 | NP | | 292 | NP | |
| 229 | NP | | 293 | P | |
| 230 | NP | | 294 | NP | |
| 231 | NP | | 295 | NP | |
| 232 | NP | | 296 | NP | |
| 233 | P | | 297 | P | |
| 234 | NP | | 298 | NP | |
| 235 | NP | | 299 | P | |
| 236 | P | | 300 | P | |
| 237 | P | | 301 | NP | |
| 238 | P | | 302 | P | |
| 239 | P | | 303 | P | |
| 240 | P | | 304 | P | |
| 241 | P | | 305 | NP | |
| 242 | NP | | 306 | NP | |
| 243 | P | | 307 | NP | |
| 244 | P | | 308 | NP | |
| 245 | P | | 309 | NP | |
| 246 | P | | 310 | NP | |
| 247 | P | | 311 | P | |
| 248 | P | | 312 | NP | |
| 249 | P | | 313 | NP | |
| 250 | P | | 314 | NP | |
| 251 | P | | 315 | NP | |
| 252 | P | | 316 | P | |
| 253 | P | | 317 | P | |
| 254 | P | | 318 | P | |
| 255 | P | | 319 | NP | |
| 256 | P | | 320 | NP | |
| 257 | P | | 321 | P | |
| 258 | P | | 322 | P | |
| 259 | P | | 323 | P | |
| 260 | P | | 324 | P | |
| 261 | P | | 325 | NP | ¶ 6 |
| 262 | NP | | 326 | NP | Grp. Pat. |
| 263 | P | | 327 | NP | ¶ 6 |
| 264 | P | | 328 | NP | ¶ 9 |
| 265 | P | | 329 | NP | ¶ 8 |
| 266 | P | | 330 | NP | ¶ 6 |
| 267 | P | | 331 | NP | |
| 268 | P | | 332 | NP | |
| 269 | P | | 333 | NP | ¶ 10 |
| 270 | NP | | 334 | NP | |
| 271 | P | | 335 | AWP | |
| 272 | NP | | 336 | NP | after "feline" |
| 273 | NP | | 337 | AWP | |
| 274 | P | | 338 | P | |
| 275 | NP | | 339 | AWP | |
| 276 | P | | 340 | P | |
| 277 | P | | 341 | P | |
| 278 | NP | | 342 | NP | |
| 279 | NP | | 343 | NP | |
| 280 | NP | | 344 | NP | |
| 281 | NP | | 345 | P | |
| 282 | NP | | 346 | P | |
| 283 | NP | | 347 | NP | |
| 284 | P | | 348 | NP | |
| 285 | P | | | | |
| 286 | P | | | | |

| Item | Decision | Redaction |
|---|---|---|
| 349 | NP | |
| 350 | NP | |
| 351 | NP | |
| *352 | P | |

| Item | Decision | Redaction Notes |
|---|---|---|
| *353 | NP | |
| *354 | P | |
| *355 | P | |
| *356 | P | |
| *357 | P | |

*Document 352 = BR 197315
*Document 353 = BR 197328
*Document 354 = BR 197338
*Document 355 = BR 197341
*Document 356 = BR 197343
*Document 357 = BR 197634