**ROHM AND HAAS COMPANY, Plaintiff,**

v.

**BROTECH CORPORATION, Defendants.**

**Civ. A. No. 90–109–RRM.**

United States District Court,
D. Delaware.

March 15, 1993.

---

Rudolf E. Hutz, N. Richard Powers, and Jeffrey B. Bove, Connolly, Bove, Lodge & Hutz, Wilmington, DE, and William E. Lambert, III, Rohm and Haas Co., Philadelphia, PA, for plaintiff.

Robert K. Payson, Potter Anderson & Corroon, Wilmington, DE, Raphael V. Lupo, Jack Q. Lever, Jr., Donna M. Tanguay, and Robert W. Zelnick, Willian Brinks Olds Hofer Gilson & Lione, Washington, DC, Herbert B. Keil, Keil & Weinkauf, Washington, DC, and Paul R. Rosen, and Niels Korup, Spector Gadon & Rosen, P.C., Philadelphia, PA, for defendants.

## OPINION

McKELVIE, District Judge.

In this patent infringement case, the plaintiff, Rohm and Haas Company, has identified over 1,100 documents it has withheld from production on the ground that they are protected from disclosure by the attorney client privilege or as work product. *See* Docket Item 259 at A–1 ("D.I. ____"). The defendant, Brotech Corporation, moved for an *in camera* inspection of these documents and, in August of 1992, the Court directed Brotech to designate a representative sample of fifty of the 1,100 documents for Rohm and Haas to submit to the Court for inspection. D.I. 382. Brotech designated fifty documents for inspection and Rohm and Haas submitted copies of those documents to the Court along with a summary of information on its basis for claiming that the documents are protected from disclosure. *See* D.I. 411.

In November, 1992, after reviewing the fifty documents as designated by Brotech, the Court ordered Rohm and Haas to produce four of the fifty documents. Rohm and Haas had withheld those four documents from production on the basis that they contained technical information provided to counsel in connection with the *ex parte* prosecution of a patent. The Court found Rohm and Haas had failed to demonstrate that the primary purpose of the communication of the documents to counsel was to solicit legal advice based on that technical information. The Court also ordered Rohm and Haas to produce those documents among the 1,100 that it had withheld on a similar basis. *See* D.I. 484.

After additional discovery, Brotech has returned with a request that the Court review certain issues relating to Rohm and Haas' privilege claims. Specifically, Brotech has moved to compel production of four documents: the first two being documents identified by Rohm and Haas as draft patent applications (documents 220 and 401); the second two being scientific memoranda (documents 1410 and 1417).

### 1. *The Defendant's Motion to Compel the Production of Draft Patent Applications*

#### a. *document 220*

▮ Brotech asks the Court to reconsider its November, 1992, decision that a document

Rohm and Haas had identified as a draft patent application, document 220, and that Brotech had designated for *in camera* inspection, is protected from disclosure by the attorney client privilege.

In submitting the fifty representative documents to the Court for inspection in September of 1992, Rohm and Haas reported that it had misdescribed document 220 on the schedule of privileged documents it had provided Brotech in discovery. It noted that the document is not a draft of a patent application. Rather, it is a copy of a portion of an affidavit that was filed in connection with the patent application. *See* D.I. 411 at p. 4. Document 220 was found in an attorney's file and has yellow highlighting of passages of the affidavit that the attorney, Louis F. Kline, thought were pertinent to certain non-infringement arguments being made by another company. Rohm and Haas argued that the document reveals the attorney's thought processes in connection with potential litigation with another company and is protected from discovery under the work-product doctrine. *See* D.I. 411 at p. 4.

The Court again has reviewed document 220 and agrees that Mr. Kline's highlighting reflects the thought processes of counsel in connection with a matter for which he was providing advice and services to his client and that it should be protected from disclosure either under the attorney client privilege or as work product.

b. *document 401*

█ In its letter renewing its request for a review of this issue of whether or not a draft application is protected from disclosure, Brotech noted that Rohm and Haas also withheld document 401 as a draft patent application. Brotech had initially designated document 220 as an example of a draft application to be reviewed *in camera*. As Rohm and Haas had misidentified document 220 and as Brotech has not had, therefore, a fair opportunity to test this issue, the Court directed Rohm and Haas to submit document 401 for inspection.

In discovery, Rohm and Haas had identified document 401 as coming from the files of H. Forman, Esquire, an attorney in its pat-

ent department. It reported that the date of the document was "unknown." The author was identified as "Unknown, probably F. Myers." The subject matter of the document was identified as "Draft of patent application," and the basis for withholding the document was attorney client privilege and work product. *See* D.I. 259 at A–30.

By a cover letter dated March 10, 1993, Rohm and Haas forwarded a copy of document 401 to the Court for *in camera* inspection. *See* D.I. 549. Rohm and Haas notes in its letter to the Court that, on further review, document 401 appears to be a draft patent application Dr. Meitzner, a co-inventor of the patent in issue, forwarded to Forman on March 13, 1958. Rohm and Haas has also submitted to the Court a copy of a March 13, 1958, memorandum from Meitzner to Forman in which Meitzner notes he is following up on a recent phone conversation and is sending Forman a rough draft of a patent application.

A review of document 410 discloses that it has the following handwritten notes on it: "Dr. Forman" on the top right hand side of the cover page, and below that "Transmitted by Dr. Meitzner memo of 3/13/58." In addition, the copy of Meitzner's March 13th memorandum to Forman has a hand written note on it indicating that Forman had a March 24, 1958, conversation with Meitzner relating to the draft application. The draft patent application has notes and markings on it that appear to have been made by Forman.

Brotech argues that there is widespread law both in and outside of this Circuit recognizing that draft patent applications are not privileged. For example, in *Howes v. Medical Components, Inc.*, 7 U.S.P.Q.2d (BNA) 1511, 1512 (E.D.Pa.1988), the court ordered the plaintiff to produce draft applications, noting:

> The attorney-client privilege does not protect technical information meant primarily to aid in the completion of a patent. [*Hercules Incorporated v. Exxon Corporation*, 434 F.Supp. 136, 148 (D.Del.1977) ]; *Jack Winter, Inc. v. Koratron Co. Inc.*, 54 F.R.D. 44, 46 (N.D.Cal.1971). Where the dominant purpose behind an attorney-

client communication is the filing of the patent application, the attorney serves merely as a "conduit" for such information to the patent office. *Hercules,* 434 F.Supp. at 148; see also *Knogo Corp. v. United States et. al.,* 213 U.S.P.Q. (BNA) 936 (Ct.Cl.1980). The first three documents sought by defendant AHS are drafts of the patent application for the patent in suit and as such are not protected by the attorney-client privilege. *Detection Systems Inc. v. Pittway Corp.,* 96 F.R.D. 152 (W.D.N.Y.1980); *Sneider v. Kimberly–Clark.,* 91 F.R.D. 1, 5 (N.D.Ill.1980); *Jack Winter,* 54 F.R.D. at 57.

In *Howes,* the court found the draft patent applications were not privileged on the basis that they did not contain or reflect a privileged communication; that is, the court found the applications contained technical information that is not privileged and that consequently, in the process of drafting the application and filing the final draft, the attorney was simply acting as a conduit forwarding this technical information to the Patent Office. Those courts that find draft applications are not privileged seem to have adopted this analysis. *See e.g., Quantum Corp. v. Western Digital Corp.,* 15 U.S.P.Q.2d (BNA) 1062 (N.D.Cal.1990) (attorney is merely serving as a conduit for factual information); *Detection Systems, Inc. v. Pittway Corp.,* 96 F.R.D. 152 (W.D.N.Y. 1982) (finding no privilege attaches to patent applications and noting that the privilege does not apply to technical information communicated to the attorney primarily for aid in completing patent applications and that does not call for a legal opinion or interpretation).

In support of its claim that this document is privileged, Rohm and Haas relies on *Knogo Corp. v. United States,* 213 U.S.P.Q. (BNA) 936 (Ct.Cl.1980) and *Advanced Cardiovascular Systems, Inc. v. C.R. Bard, Inc.,* 144 F.R.D. 372 (N.D.Cal.1992). In those cases, the courts found that, in drafting a patent application, a lawyer is not merely acting as a conduit communicating technical information from his client to the Patent Office, but rather is receiving confidential information and providing advice and servic-

es to the client based on that information. The courts held, therefore, that these communications relating to the draft applications were privileged and that the draft applications were consequently protected from disclosure.

■ Judge Wyzanski set out in *United States v. United Shoe Machinery Corporation,* 89 F.Supp. 357, 358 (D.Mass.1950) the factors to which courts have traditionally looked in determining whether a communication should be protected from disclosure by the attorney client privilege. They are: (1) whether the asserted holder of the privilege is or has sought to become a client; (2) whether the person to whom the communication was made is a member of the bar and is acting as a lawyer in connection with the communication; (3) whether the communication relates to a fact of which the attorney was informed by the client in confidence for the purpose of obtaining legal advice; and, (4) whether the privilege has been claimed and not waived.

In this case, the information submitted by Rohm and Haas shows that the communications reflected in document 401 should be protected from disclosure under this traditional definition of the attorney client privilege. That is, Rohm and Haas has established each of the essential elements necessary to show that the communication should be protected from disclosure by the privilege. They are as follows: (1) Meitzner was writing to Forman as a client; (2) Forman is a member of the bar and received and acted on the communication as a lawyer; (3) the communication relates to information provided by Meitzner to Forman to obtain legal advice and assistance; and (4) the communication has been kept confidential. Both the draft application prepared by Meitzner and the notes and comments by Forman on that draft fall within this definition and should be protected as privileged.

Further, there is nothing about the nature of the communications in document 410 that suggests they should not be protected from disclosure, or that the privilege has been waived. First, the fact that the document is a draft of what will be a public document does not mean that the communications re-

lating to the draft should not be protected from disclosure. Drafts often contain information and communications relating to the subject matter of the document, including, for example, proposed material to be included, suggested additions and deletions, and comments on the contents, all of which are intended to be considered confidential between attorney and client and not intended for public disclosure.

Second, although Dr. Meitzner may have a duty to disclose material information relating to the invention in the final draft of the application, that duty does not prevent him from having confidential communications with counsel relating to the nature of that information, just what information should be disclosed as material, and the manner and method of presenting that information in the application.

Third, there is nothing about the subject matter of the communication between Meitzner and Forman, including the technical information Meitzner sets out in the draft, that takes it outside of the traditional definition of the type of communications that can and should be protected from disclosure as privileged. At this stage of the drafting process, Forman is not a mere conduit of raw data. On the contrary, for the purposes of this draft, Meitzner was seeking Forman's advice on what information should be included and how it should be set out in the application.

Finally, Forman's notes on the draft also should be protected, as they appear to reflect his analysis of the approach Meitzner took in the draft, the areas where Meitzner's expression of his invention may have appeared unclear to Forman, and the technical information as to which Forman had some questions. As Forman noted on document 505, he forwarded his advice with regard to these matters to Meitzner on March 24, 1958.

Based on this review of document 401, the Court finds it should be protected from disclosure by the attorney client privilege.

2. *Brotech's Motion to Compel the Disclosure of Information from Scientific Studies*

Brotech seeks the production of two additional documents Rohm and Haas has withheld based on the attorney client privilege.

a. *document 1410*

■ Document 1410 is a November 20, 1968, memorandum from D.B. Fordyce, a chemist, to Frank Neruda, Rohm and Haas patent counsel, with copies shown to ten Rohm and Haas employees. The document sets out data from tests done for Rohm and Haas. Fordyce cites the data in reviewing and analyzing patent claims in connection with an interference with Rohm and Haas' application. In submitting a copy of this document for *in camera* inspection, Rohm and Haas also provided the Court with copies of other documents to demonstrate that the data set out in document 1410 is disclosed in other documents that have been produced in discovery in this case. *See* D.I. 510.

Rohm and Haas contends document 1410 has been maintained as confidential and that it was prepared to enable counsel to provide legal advice. A review of the memorandum tends to confirm this description, as it appears the author addressed the document to counsel and offered comments of a technical nature apparently to assist counsel in his work.

In this context, the Court will not order Rohm and Haas to produce this document. Rohm and Haas has shown that the document is entitled to protection from disclosure by the attorney client privilege. Rohm and Haas has avoided the problem of possibly sweeping the technical data in under the privilege by ensuring that the technical information has otherwise been produced to the defendant. *See Advanced Cardiovascular Systems, Inc. v. C.R. Bard, Inc.*, 144 F.R.D. 372 (N.D.Cal.1972).

b. *document 1417*

■ Document 1417 is a September 11, 1959, memorandum from Dr. Meitzner to a laboratory file, with copies shown to six others, including Rohm and Haas patent counsel J. Bergin. The memorandum identifies possible claims of infringement and reviews how patents and applications might affect on Rohm and Haas' plans. Document 1417 has attached to it three appendices that, while it

is not clear from counsel's January 7, 1993, cover letter to the Court, appear to have been prepared by or for the author of the memorandum for the purpose of illustrating or supporting the information in it.

Rohm and Haas contends that document 1417 is privileged as it was written by Meitzner to Bergin so that he could determine how certain products might be infringed. It is not clear from a reading of the document that it should be protected from disclosure as privileged. For example, while Bergin is shown as receiving a copy of the memorandum, it is not addressed to him. Rather, the memorandum is titled "Laboratory 31 memorandum 78," which suggests it is more in the nature of a laboratory file, with a copy to counsel, than a communication directed primarily to counsel. Further, the subject matter of the memorandum is reviewing matters to help formulate plans with respect to a competitor and can easily be read as more directed to business and technical issues than to legal matters.

As Rohm and Haas has not established a factual basis for finding that document 1417 and its appendices fall within the protection of the attorney client privilege, the Court will order it be produced.

In light of the problems we have identified in Rohm and Haas' decision to withhold certain documents from production as privileged, and in its description of the documents it has withheld, the Court will allow Brotech to designate an additional fifty documents to be produced by Rohm and Haas for *in camera* inspection.

The Court will issue an Order in accordance with this Opinion.