**SANTRADE, LTD. and Sandvik Special Metals Corporation, Plaintiffs,**

v.

**GENERAL ELECTRIC COMPANY, Defendant.**

No. 90–107–CIV–7–D.

United States District Court, E.D. North Carolina, Wilmington Division.

April 15, 1993.

---

Daniel Lee Brawley, Ward & Smith, George Rountree, III, Rountree, Seagle & Brawley, Wilmington, NC, for plaintiffs.

Michael Murchison, Murchison, Taylor, Kendrick, Gibson & Davenport, Wilmington, NC, for defendant.

### ORDER

McCOTTER, United States Magistrate Judge.

This patent infringement action is before the court on the motion of General Electric Company (GE) for an order compelling plaintiffs, Santrade, Ltd., and Sandvik Special Metals Corporation (referred to here as Sandvik) to produce to GE certain documents withheld from discovery on the basis of attorney-client privilege.

The attorney-client privilege protects the "substance of confidential communications from client to attorney." *Republican Party of North Carolina v. Martin*, 136 F.R.D. 421, 426 (E.D.N.C.1991). The privilege also protects legal advice that could "arguably reveal a client's confidences." *Id.*

A party may withhold documents from discovery on the basis of privilege if each of the following elements applies to the document:

'(1) the asserted holder of the privilege is or sought to become a client; (2) the person to whom the communication was made (a) is a member of the bar of a court, or his subordinate and (b) in connection with the communication is acting as a lawyer; (3) the communication relates to a fact of which the attorney was informed (a) by his client (b) without the presence of strangers (c) for the purpose of securing primarily (i) an opinion of law or (ii) legal services or (iii) assistance in some legal proceeding, and not (d) for the purpose of committing a crime or tort; and (4) the privilege has been (a) claimed and (b) not waived by the client.'

*Republican Party of North Carolina*, 136 F.R.D. at 425–426 (quoting *N.C. Elec. Membership Corp. v. Carolina Power & Light Co.*, 110 F.R.D. 511, 513 (M.D.N.C.1986); *Burroughs Wellcome Co. v. Barr Laboratories, Inc.*, 143 F.R.D. 611, 615 (E.D.N.C.1992) (quoting *United States v. Jones*, 696 F.2d 1069, 1072 (4th Cir.1982)).

The party asserting the privilege has "the burden of persuasion as to *each* element of the privilege." *Republican Party of North Carolina*, 136 F.R.D. at 426 (emphasis in original). Under Fourth Circuit law, the privilege is strictly construed. *United States v. Jones*, 696 F.2d 1069 (4th Cir. 1982).

The original attorney-client privilege claims were made by Sandvik in detailed document listings provided to GE during discovery. Sandvik first contends that GE's motion is untimely. It appears that GE's motion was timely filed but that the memorandum in support was filed four days after the cut-off date for filing pre-trial motions. The timeliness objection is overruled.

Sandvik has provided GE with three detailed lists of withheld documents. These lists appear as Exhibits A and B in the McNally Declaration accompanying GE's motion to compel. These lists include identification of the date, article, and recipient(s) of the document, the identity of others copied with the document, the privilege invoked, and a description of the general subject matter of the document. These lists are in the format

suggested in *Duplan Corp. v. Deering Milliken*, 397 F.Supp. 1146, 1156 (D.S.C.1974).

GE has divided the contested documents into Groups I, II, and III and further divided Groups I and II into sub-categories. *See* Exhibits B, C, and D of Declaration of Jeremy Lack. These sub-categories correspond with GE's specific arguments as to why the identified documents are not protected by attorney-client privilege. Documents may appear in one or more groups and/or sub-categories. This court's order may refer to a document more than once because the court has found that several documents are not protected by attorney-client privilege for one or more reasons. Furthermore, the court has found some documents to be unprotected for different reasons than assigned by GE. Because of the complexity of this case, this court decided that an *in camera* inspection of the documents would be necessary to properly decide the motion. *See Burroughs Wellcome*, 143 F.R.D. at 614. The court has conducted the *in camera* review.

In response to GE's motion, Sandvik has re-evaluated its claim of attorney-client privilege and has agreed to voluntarily produce to GE some of the documents, provided GE stipulates that it will not assert this production as a waiver of attorney-client privilege as to any further documents. GE refuses to enter such stipulation.

Of the documents which Sandvik is willing to produce subject to a stipulation against waiver, this court concludes that the following do not contain any client confidences:

Documents Nos. 63, 73, 92, 94, 100, 101, 102, 108, 109, 114, 119, 129, 130, 148, 152, 153, 156, 157, 158, 160, 161, 166, 202 and 216.

Some of the information is technical or business information which is not protected by the attorney-client privilege as well as not containing client confidences communicated to counsel for legal advice or opinion. Accordingly, Sandvik is ORDERED to forthwith disclose to GE the above-mentioned documents. In respect to Document No. 204, the second page contains attorney-client confidences. However, Sandvik is ORDERED to produce the first page, which does not. Document No. 210 also contains attorney-

client confidences. Accordingly, the motion to compel is DENIED as to the second page of Document No. 204 and all of Document No. 210.

GE contends that the Sandvik has failed to provide in the affidavits "precise and certain reasons" for upholding their claims of privilege. *See North Carolina Electric Membership Corp. v. Carolina Power & Light*, 110 F.R.D. 511, 515 (M.D.N.C.1986). The affidavits together with the court's *in camera* inspection provide a sufficient basis for the court to decide the privilege claims.

### GROUP I DOCUMENTS

■ GE contends that Sandvik has not established that Group I(a) documents contain "client confidences." First, GE argues that the documents do not contain "client confidences" where the person to whom the communication was made is not a member of a bar of a court, is not acting as a lawyer, or is not accorded attorney-client privilege under the law of the foreign country in which the person is domiciled. *See Burroughs Wellcome*, 143 F.R.D. at 615, 617. GE says, for example, that the Taquist Declaration fails to establish that he is admitted to the bar of any court, is a lawyer or is accorded attorney-client privilege under Swedish law. GE's argument as to Taquist is without merit. In his affidavit, Exhibit 2 to Plaintiffs' Memorandum in Opposition to GE's Motion to Compel Production of Privileged Documents, Taquist says that he is "recognized as an intellectual property attorney under the laws of Sweden, duly registered to practice before the Swedish Patent Office ..." and "authorized to practice before the European Patent Office" and that he is in-house counsel to Santrade and Sandvik. Taquist states that he has reviewed privileged information as patent attorney for Sandvik which, according to Swedish law, he cannot give testimony on unless there is an extraordinary reason, and the Swedish rule on privileged information is similar to that of the State of North Carolina. GE is not entitled to production of Group I(a) documents for this reason.

■ GE next contends that Group I(b) documents do not contain "client confidenc-

es" where they merely refer to legal advice absent a showing that such documents relate to facts of which the attorney was informed by the client. *See In Re Sealed Case*, 737 F.2d 94, 99 (D.D.C.1984). The court finds that many of these documents refer to confidential facts communicated by clients. Those which do not, Nos. 80, 85, enclosures to 90 and 91, 95, 105, 106, 107, 110, 112, 113, 126, 138, 140, 143, 144, 145, 159, 168, 172, 194 except for first page, 195, 206, and last 5 pages of 212, are ordered disclosed. Most of these relate to facts communicated by strangers. Some just don't reveal any client confidences at all.

■■■ Third, GE correctly contends that documents do not contain protected "client confidences" where they relate to business agreements with unrelated third parties, or general business matters or technical matters, unless they were communicated primarily for a legal purpose. *Republican Party of North Carolina*, 136 F.R.D. at 426. GE contends that plaintiffs have not shown that Group I(c) documents were communications made for the primary purpose of securing legal advice. Some of these documents meet this test. However, Documents Nos. 33, 39, 44, 68, 74, 83, enclosures to 90 and 91, 93, 115 except for last paragraph on page one and all of page two, 121, 133, 135, 136, 139, 141, 142, 144, 145, 171, 173, 180, 181, 182, 183, 184, 185, 187, 190, 192, and 215 except for redacted material on No. 18347, do not because the communications were made for the primary purpose of communicating business or technical information; these documents are ordered disclosed.

■■■ In respect to Group I(c) documents, the court particularly finds that except for Documents Nos. 125 and 134, all the documents in conjunction with negotiation of the Westinghouse licensing agreement are not protected by the attorney-client privilege, as they contain details underlying published data. Preliminary drafts of published data, including attorney notes necessary to the preparation of the documents, are discoverable. *Republican Party of North Carolina*, 136 F.R.D. at 427. Where a client communicates information to his attorney with the understanding that the information will be revealed to others, the information and the underlying details are not privileged. *Id.; United States v. (Under Seal)*, 748 F.2d 871, 875 (4th Cir.1984).

> The details underlying the published data are the communications relating to the data, the document, if any, to be published containing the date, all preliminary drafts of the documents, and any attorney's notes containing material necessary to the preparation of the document. Copies of other documents, the contents of which were necessary to the preparation of the published document, will also lose the privilege. . . .

*(Under Seal)*, 748 F.2d at 875, n. 7. Client confidences contained in Documents Nos. 125 and 134 were communicated primarily for the purpose of the rendition of legal advice and were not intended to be revealed to others. The other documents ordered disclosed pertain to business agreements or technical information for which the court finds no intention to keep confidential.

■■■ Fourth, GE correctly contends that documents do not contain protected "client confidences" if they primarily relate to technical information compiled in connection with the prosecution of a patent application. *Id.* Privilege does not extend to drafts of patent applications. *Duplan*, 397 F.Supp. at 1168. The court concludes that the following documents of Group I(d) contain information that was communicated for a primary purpose other than that of obtaining legal advice, such as being communicated to the Patent Office in the prosecution of a patent application: Nos. 74, 77, 80, 85, 104, 113, and 118. The other documents in Group I(d) contain client confidences communicated primarily for the purpose of obtaining legal advice.

■■■ Fifth, GE contends that documents do not contain protected "client confidences" where privilege has been waived. To the extent that Sandvik has inadvertently or deliberately disclosed attorney-client communications, it has waived attorney-client privilege as to all communications on the subject covered by these communications. *U.S. v. Western Elec. Co., Inc.*, 132 F.R.D. 1,

2 (D.D.C.1990). GE contends that the production of Taquist's opinion (DX–207) stating that the subject matter of the patents-in-suit covers Method E is a waiver of the attorney-client privilege as to all communications relating to the subject matter of the patents in suit. DX–207 was first brought to GE's attention at Schemel's deposition on October 21, 1992, and no claim of was been asserted to DX–207. *See U.S. v. Jones,* 696 F.2d 1069, 1074 (4th Cir.1982). GE thus contends that Group I(e) documents should be produced. Although DX–207 expresses a legal opinion, it recites records in the Patent Office, and does not appear to be based on "client confidences." As DX–207 doesn't disclose a confidential communication, the document does not constitute a waiver of the attorney-client privilege. Therefore, Group I(e) documents are not discoverable on this ground.

 Sixth, GE contends that documents do not contain protected "client confidences" where the asserted holder of the privilege is not the client who communicated facts to the attorney. For example, the plaintiff may not properly assert privilege on documents which relate to facts communicated by a third party to the third party's attorney. The plaintiffs have not alleged or shown a "community of interest" with Asea Brown Boveric AB (Asea). *See Duplan,* 397 F.Supp. at 1176. Accordingly, the Asea documents should be produced, Nos. 95, 105, 106, 107, 110, 112, and 113.

The court concludes that the following documents are not protected for the reason that they were or intended to be revealed to strangers or published: Documents Nos. 3, 4, 5, 6, 39, 83, 96, 97, 98, 99, 103, 104, 105, 106, 107, 110, 112, 113, 121, 126, 139, 143, 144, and 190.

### GROUP II DOCUMENTS

GE contends that Sandvik has not satisfied its burden to establish that Group II documents were provided to an attorney while seeking advice.

 First, as to Group II(a) documents, GE contends that Sandvik has failed to show that the author, addressee, or copy recipient of the documents was a lawyer. Plaintiffs argue that these documents are nonetheless privileged because they repeat legal advice of an attorney. GE contends that internal corporate documents reflecting such advice are not privileged. The attorney-client privilege may exist in the corporate setting. *Upjohn Co. v. United States,* 449 U.S. 383, 391, 101 S.Ct. 677, 683, 66 L.Ed.2d 584 (1981). Corporations may communicate privileged information at various levels without waiving the attorney-client privilege. *N.C. Elec. Membership,* 110 F.R.D. at 514.

 A document need not be authored or addressed to an attorney in order to be properly withheld on attorney-client privilege grounds. First, in instances where the client is a corporation, documents subject to the privilege may be transmitted between non-attorneys to relay information requested by attorneys. *Cuno, Inc. v. Pall Corp.,* 121 F.R.D. 198, 202–03 (E.D.N.Y.1988). Second, documents subject to the privilege may be transmitted between non-attorneys (especially individuals involved in corporate decision-making) so that the corporation may be properly informed of legal advice and act appropriately. *See Eutectic Corp. v. Metco, Inc.,* 61 F.R.D. 35, 38 (E.D.N.Y.1973).

 The attorney-client "privilege exists to protect not only the giving of professional advice to those who can act on it but also the giving of information to the lawyer to enable him to give sound and informed advice." *Upjohn Co. v. U.S.,* 449 U.S. at 390, 101 S.Ct. at 683. The privilege includes communications involving corporate officers and agents who possess the information requested by the attorney or who will act on the legal advice. *Id.*

As to the documents found protected, Sandvik has satisfied the court that the author, addressee, or copy recipient was a lawyer or the document includes communications involving corporate officers and agents who possessed the information requested by the attorney or who acted on the legal advice.

Second, as to the Group II(b) documents (Nos. 39, 92, 94, 106, 155, 158), GE contends that even where a lawyer is listed as an

author, addressee, or copy recipient, Sandvik has failed to establish that they had an attorney-client relationship with that lawyer. Generally, the plaintiffs have sufficiently made this showing through the affidavits and/or from the documents themselves. The court notes that all of these documents have elsewhere been ordered disclosed for other reasons.

Third, as to the Group II(c) documents, GE contends that Sandvik has failed to establish that they relate to a request for legal advice or services. As to the documents found protected, the court finds that they relate to a request for legal advice or services.

Fourth, as to Group II(d) documents, GE contends that the plaintiffs have not established that the listed attorney was acting as plaintiffs' attorney with respect to the subject matter of the information withheld. Except as to the Asea Documents (Nos. 95, 105, 106, 107, 110, 112, 113, and 143), the court finds that all of the attorneys were acting as plaintiffs' attorneys with respect to the subject matter of the information withheld.

### GROUP III DOCUMENTS

■ GE contends that Sandvik has not established that Group III documents are communications with foreign patent agents or attorneys that are privileged. Generally, communications with patent agents, American or foreign, are not subject to privilege in the United States. *Burroughs Wellcome,* 143 F.R.D. at 616. However, "the privilege may extend to communications with foreign patent agents related to foreign patent activities if the privilege would apply under the law of the foreign country and that law is not contrary to the law of this forum." *Id.* at 616–617. The burden, therefore, rests upon Sandvik to show, as to each country, that "the attorney-client privilege extends to patent attorneys and/or patent agents and that the communications were intended to be confidential and not merely passed on to a patent examiner." *Id.* at 617.

■ GE contends that Sandvik has failed to show that the foreign patent attorneys and agents who wrote or received the Group III documents are subject to an attorney-client privilege in their home country.

GE first says that the communications involving Swedish patent attorneys or agents are not privileged. GE contends that the Taquist affidavit is insufficient. Taquist states that under local Swedish law, a patent attorney "cannot give testimony on [privileged information he has received] unless there is an extraordinary reason to give testimony, none of which is applicable here."

GE says that the Taquist affidavit does not indicate whether under Swedish law there is a distinction between lawyers and patent attorneys because such distinction exists in other countries, such as Korea. In the absence of any evidence that such a distinction exists in Sweden, the court will assume that one does not.

■ GE complains that Taquist did not submit a copy of Swedish law, or attorney-client privilege. However, Taquist specifically refers to the applicable provision of Swedish law. His affidavit, in the absence of anything to the contrary, is sufficient to establish the Swedish law of attorney-client privilege. *See Burroughs Wellcome,* 143 F.R.D. at 621–2.

■ GE says that Taquist fails to explain what "extraordinary reason[s]" abrogate the testimonial privilege in Sweden nor why he is competent to render an opinion of the scope of the attorney-client privilege in North Carolina. Taquist's failure to explain "extraordinary reasons" is not fatal to Sandvik's showing. The court considers "extraordinary reasons" to mean very unusual reasons. Nor does the Swedish law on attorney-client privilege appear contrary to North Carolina law.

■ GE says that Taquist's affidavit is insufficient to show that an attorney-client privilege applies to Swedish patent agents. Taquist also states that Swedish patent agents are subject to the attorney-client privilege under Swedish law. The Taquist affidavit is sufficient to show that the attorney-client privilege exists under Swedish law to communications to patent agents as well as attorneys. *See Burroughs Wellcome,* 143 F.R.D. at 621.

■ GE correctly contends that communications with the Canadian patent agent are not accorded the attorney-client privilege under Canadian law. Accordingly, Group III Documents Nos. 96, 97, 98, 99, 101, 103, and 104 are not privileged and are ordered produced. Communication of these documents to a Canadian patent agent waives the attorney-client privilege. *Id.* at 617. It is irrelevant that those communications also involve a Swedish patent agent whose communications are subject to the privilege.

■ GE contends that Sandvik has failed to meet its burden with respect to documents that reflect communications with Japanese patent attorneys and agents. Sandvik relies on two letters provided by two of its Japanese patent attorneys. Neither letter is sufficient to establish attorney-client privilege. Article 281 of the Japanese Code of Civil Procedure refers to the applicability of privilege under Japanese law. *Alpex Computer Corporation v. Nintendo Co., Ltd.,* 1992 WL 51534, *2, 1992 U.S.Dist. LEXIS 3129, 2–3. However, the Code refers only to testimony of the attorney or patent agent and does not allow the client of a Japanese patent agent to withhold documents on the ground of privilege. *Id.* Nor does Article 312 of the Code grant any type of attorney-client privilege. Article 312 merely refers to production of documents. Thus, the Asamura Patent Office documents (Nos. 95, 105, 106, 107, 110, 112, 113, 155, 159, 163, 164, and 167) are not protected by attorney-client privilege.

GE contends that Sandvik has failed to meet its burden as to Document No. 143, a communication from a Korean patent firm to Asea. It is not necessary for the court to determine whether Korea recognizes an attorney-client privilege, as Document No. 143 reveals the client to be Asea and not Sandvik. Accordingly, No. 143 is discoverable.

■ GE has not challenged Sandvik's contention that Germany recognizes attorney-client privilege and that the privilege applies to patent attorneys. In a letter of February 17, 1993, German patent attorney Dieter Weber states his opinion that under section 383, paragraph 6, of the German Code of Civil Procedure, "all communications between a German patent attorney and his client which occur in the rendition of legal services for the client, the client and the attorney may refuse to disclose such communications in a court proceeding." Accordingly, this court concludes that the following documents to the German patent attorney are protected by attorney-client privilege: Documents Nos. 117, 118, 120, 126, 150, 165, and 168.

In conclusion, the court finds that the following documents are protected by the attorney-client privilege for reasons earlier stated herein: 9, 10, 11, 18, 19, 22, 23, 24, 26, 27, 28, 29, 31, 37, 38, 40, 48, 50, 54, 55, 56, 58, 60, redacted portion of 67, 71, 72, 78, 82, 84, 86, 89, 90 and 91 (except for enclosures), last paragraph of page 1 and all of page 2 of 115, 17, 118, 120, 122, 125, 126, 127, redacted portion of 128, 134, 147, 150, 165, 168, 174, 179, first page of 194, 196, 203, page 2 of 204, redacted portion of 209, 210, 212 except for last five pages, redacted portion of 213 and 214, and redacted material on document 18347 of 215. Document 87 is protected unless the recipient, Gullberg, is not an attorney or employee of plaintiffs in the chain of communication. Documents Nos. 116 and 146 are in German and No. 44 is in Swedish, for which the court has no English translation. The plaintiffs shall immediately file translations of these documents with the court under seal.

The plaintiffs, on or before April 22, 1993, shall produce for GE's inspection all other documents subject to the motion to compel which the court has not found to be protected by attorney-client privilege. The parties have until April 20, 1993, to file any appeal from this order to U.S. District Judge F.T. Dupree, Jr.

The court has received the documents in question under seal and has reviewed the documents *in camera.* The documents received by the court are hereby filed with the Clerk's Office under seal. The plaintiffs shall make the production from copies of documents in their possession.

■ In a letter of April 5, 1993, plaintiffs' counsel requested an opportunity to address *ex parte* any concerns of the court about the

basis of claiming privilege for a given document. GE objected to this procedure. Although the court can employ this type of procedure, *see Duplan*, 397 F.Supp. at 1157, after reviewing each document *in camera*, the court has found it unnecessary to use *ex parte* communications to resolve the merits of the motion.

The court would like to take this opportunity to compliment counsel for the very professional manner in which they have presented this and the other motions on which this court has ruled. Counsel's high degree of professionalism and courteous manner have made the court's most difficult task much easier.