SAXHOLM AS, and The Estate of Rolf Saxholm, Gunvor Saxholm, as Sole Heir, Plaintiffs,

v.

DYNAL, INC., and Dynal As, Defendants.

No. CV–94–2409 (ARR).

United States District Court, E.D. New York.

Feb. 2, 1996.

---

Richard Rochford, Denise Pursely, Nixon, Hargrave, Devans & Doyle, Garden City, NY, for Plaintiffs.

John Donofrio, Kirkland & Ellis, New York City, for Defendants.

### *MEMORANDUM ORDER*

POHORELSKY, United States Magistrate Judge:

#### Background

The plaintiffs in this patent infringement action (collectively "Saxholm") have asserted the attorney-client privilege with respect to more than 2,000 documents identified on their log of privileged documents prepared pursuant to the Standing Orders of this court governing discovery (the "privilege log"). Many of the documents come from the files of the original patent holder, who is deceased, and relate to his patent prosecutions in five countries over the last twenty years or more. The assertion of the privilege is further complicated by the fact that many of the documents bear no express indication concerning the identities of the author and the primary recipients.

The defendants (collectively "Dynal") have moved for an order compelling production of over 1,800 of these documents. Dynal has also applied for an order compelling Mr. Harald Saxholm to disclose the contents of a conversation he had with his attorney in the presence of a third-party. For the reasons set forth below, Dynal's motion concerning the documents is GRANTED in part and DENIED in part, and its motion to compel testimony from Harald Saxholm is GRANTED.

#### Discussion

 The attorney-client privilege is one of the oldest and most zealously protected privileges in the law. *Upjohn Co. v. United States,* 449 U.S. 383, 389, 101 S.Ct. 677, 682, 66 L.Ed.2d 584 (1981). A party who asserts the attorney-client privilege, however, bears the burden of establishing all the essential elements of the privilege. *von Bulow v. von Bulow,* 811 F.2d 136, 144 (2d Cir.), *cert. denied,* 481 U.S. 1015, 107 S.Ct. 1891, 95 L.Ed.2d 498 (1987); *Stryker Corp. v. Intermedics Orthopedics, Inc.,* 145 F.R.D. 298, 301 (E.D.N.Y.1992). Meeting that burden requires the submission of affidavits or other competent evidence to establish sufficient facts to prove the applicability of the privilege. *United States v. Davis,* 131 F.R.D. 391, 402 (S.D.N.Y.1990). Conclusory or *ipse dixit* assertions are not enough. *In re Grand Jury Subpoena Dated Jan. 4, 1984,* 750 F.2d 223, 225 (2d Cir.1984).

The Court of Appeals for the Second Circuit has outlined the elements of the privilege in this way:

(1) Where legal advice of any kind is sought (2) from a professional legal advisor in his capacity as such, (3) the communications relating to that purpose, (4) made in confidence (5) by the client, (6) are at his instance permanently protected (7) from disclosure by himself or by the legal advisor, (8) except the protection be waived. *In re Grand Jury Subpoena Duces Tecum,* 731 F.2d 1032, 1036 (2d Cir.1984). That Court has reiterated on numerous occasions that, like most privileges, the attorney-client privilege "should be strictly confined within the narrowest possible limits underlying its purpose." *United States v. Goldberger & Dubin, P.C.,* 935 F.2d 501, 504 (2d Cir.1991) citing, *inter alia, In re Grand Jury Subpoena Duces Tecum Served Upon Gerald L. Shargel,* 742 F.2d 61, 62 (2d Cir.1984)).

Dynal has divided the 1,800 or so documents that are the subject of this motion into six categories. Essentially, Dynal argues that Saxholm has not carried its burden of proving that the privilege applies to the documents categories. In many instances, Dynal is correct. As detailed below, the plaintiffs have failed to submit the necessary proofs to establish the elements of the attorney-client privilege with respect to large classes of the documents they have withheld. For example, a host of documents were withheld because they were "presumably" authored by Julian Cohen, an attorney who served as a legal advisor to the deceased holder of the privilege that is asserted. No affidavit to establish that presumption was submitted by Mr. Cohen, who is apparently alive and well.[1] Nor was any affidavit or other evidence submitted to establish the facts upon which the plaintiffs' presumption is based (typeface consistent with other documents authored by Mr. Cohen). Similarly, in some instances where the plaintiffs have sought to rely on the assertion that an author or recipient of a given document is an "agent" of an attorney or of a party, no proof

of that status has been submitted. As detailed below, to the extent the plaintiffs have failed to submit such proofs in those and similar circumstances their assertions of privilege are rejected.

### Category 1

■ The first category contains only two documents. The defendants contend both should be produced because they are communications between non-lawyers. Plaintiffs' log identifies the first as a Draft Statutory Declaration from Kristian Odegaard to an unknown party and the second as a letter conveying legal advice from K. Larsen to H. Saxholm. Since none of the identified authors or recipients of these two documents are attorneys, the documents do not appear to contain communications to or from an attorney, and the plaintiffs have submitted no proof that the documents otherwise qualify for protection under the attorney-client privilege.[2] Accordingly the court finds that these documents are not protected by the attorney-client privilege.

■ As to the letter from Larsen to Saxholm, the plaintiffs have also asserted the work-product privilege. Again, however, they assert without proof that this document was sent by an agent of H. Saxholm to Saxholm's own files at the request of Saxholm's attorneys in the context of the present litigation. That unsupported assertion is not sufficient to establish the privilege. Moreover, the mere fact that an attorney has asked that a document be placed in a client's files does not qualify the document for work-product protection.

Having failed to establish all of the essential elements for the existence of the privilege with respect to the two documents in this category, the plaintiffs are required to produce them to the defendants.

---

1. Mr. Cohen was the attorney whose conversation with Harald Saxholm on January 20, 1994 is the subject of the defendants' motion to compel discovery.

2. The document from Kristian Odegaard is one of those which, the plaintiffs argue, was "presumably" prepared by attorney Julian Cohen.

Aside from the plaintiffs' failure to submit any evidence to support that presumption, mere preparation of a document by an attorney does not mean it is privileged, particularly where the plaintiffs have not established an attorney-client relationship between Mr. Odegaard and Mr. Cohen.

## Category 2

The second category of documents for which the defendants seek an order compelling production are identified as "draft portions of patent application materials and correspondence conveying information to be provided to Patent Offices." The analysis below concerning these materials distinguishes between draft patent applications and correspondence conveying information to be provided to patent offices.

The attorney-client privilege of course protects "confidential disclosures by a client to an attorney made in order to obtain legal assistance." *Fisher v. United States,* 425 U.S. 391, 403, 96 S.Ct. 1569, 1577, 48 L.Ed.2d 39 (1976). The applicability of the attorney-client privilege to draft patent applications [3] has split the courts who have addressed the issue. *Compare, e.g., Stryker Corp. v. Intermedics Orthopedics, Inc.,* 145 F.R.D. 298, 303 (E.D.N.Y.1992) and *Bio–Rad Laboratories, Inc. v. Pharmacia, Inc.,* 130 F.R.D. 116, 126 (N.D.Calif.1990) *with, e.g., Rohm and Haas Co. v. Brotech Corp.,* 815 F.Supp. 793, 794–97 (D.Del.1993), *aff'd,* 19 F.3d 41, 1994 WL 48546 (Fed.Cir.1994). Draft applications are typically prepared by attorneys and are based, in part, on factual information communicated to them by their clients.[4] Where courts have found draft applications unprotected by the privilege, the analysis typically rests on the notion that the attorneys were simply conduits for technical information that was being passed on to the government's Patent and Trademark Office (the "PTO"), and the communications by their clients to them were therefore not being made primarily to obtain legal advice. *E.g., Stryker,* 145

F.R.D. at 303; *Quantum Corp. v. Western Digital Corp.,* 15 U.S.P.Q.2d 1062, 1064, 1990 WL 357245 (N.D.Calif.1990); *Bio–Rad,* 130 F.R.D. at 127; *Howes v. Medical Components, Inc.,* 1988 WL 15191 at 1 (E.D.Pa. 1988). In *Rohm and Haas* on the other hand, the court took the view that a client who retains an attorney in connection with his patent application is seeking the attorney's advice and services concerning the crafting of the application, not merely using the attorney as a conduit for the information. Therefore, the court held, information communicated to the attorney that is thereafter included in a draft application qualifies for protection under the attorney-client privilege. *Rohm and Haas,* 815 F.Supp. at 796.

■ Despite the split among the courts, the weight of authority favors disclosure of draft patent applications. Although a client who provides information to an attorney in connection with his or her patent application does so with a view toward obtaining the attorney's advice and services, two considerations favor a finding that, at least to the extent it finds its way into a draft application, information communicated to an attorney by his client should not be protected by the privilege. First, although the client makes the communication of such information to seek advice and services, the advice and services sought are not purely, or even primarily, legal. *See, e.g., Cuno,* 121 F.R.D. at 201 and 203–04; *Bio–Rad Laboratories, Inc. v. Pharmacia, Inc.,* 130 F.R.D. 116, 126 (N.D.Cal.1990); *Glaxo, Inc. v. Novopharm Ltd.,* 148 F.R.D. 535, 539–40 (E.D.N.C.1993). Indeed, non-lawyer patent agents often provide the same "application crafting" services

**3.** The phrase "draft patent applications" in this opinion is meant to refer to all forms of drafts of submissions to the Patent and Trademark Office in connection with patent applications identified in the privilege log, including amendments, partial amendments, supplemental amendments, claims, petitions to withdraw, and other such papers.

**4.** Counsel for the parties explained much of the relevant patent application process during oral argument. Typically, an inventor will submit a proposed draft patent application for review to the Patent and Trademark Office. A patent attorney may be retained to review the draft and make any necessary changes prior to submitting

it to the Patent and Trademark Office. That Office may grant or reject the patent application: If the patent is rejected, a patent examiner will send an objection or rejection notice which would list specific reasons why a patent should not issue. The inventor, possibly with patent counsel, will make any necessary changes or amendments to the proposed patent application and resubmit the application. The proposed patent applications, any rejections or objections, and any proposed curative amendments that have been submitted to the Patent and Trademark Office become part of what the Patent and Trademark Office calls a "File Wrapper." The File Wrapper is a public record.

that attorneys do. *See Sperry v. Florida,* 373 U.S. 379, 383, 83 S.Ct. 1322, 1324–25, 10 L.Ed.2d 428 (1963); *In re Ampicillin Antitrust Litigation,* 81 F.R.D. 377, 392–95 (D.D.C.1978).

Unfortunately, the question whether the advice sought is "primarily" legal requires subjective, and therefore imprecise, line-drawing based on detailed scrutiny of the allegedly privileged matter, document-by-document and issue-by-issue. To the extent the line between legal and non-legal advice may be blurry, however, a second consideration dictates that the court favor disclosure of draft patent applications over non-disclosure. That consideration is that the client's communications are made with the distinct understanding that the information conveyed may well be revealed.[5] The client knows that his patent attorney is preparing materials to be submitted to the PTO which will become public information. Thus, looking back at the elements of the attorney-client privilege as articulated by the Second Circuit in *In re Grand Jury Subpoena Duces Tecum,* 731 F.2d at 1036, the "made in confidence" element is not particularly strong when the client's communications provide information for the purposes of preparing patent applications. The best that can be said about the client's expectations of confidentiality concerning information so conveyed is that the client has entrusted the attorney with the authority to determine what information should be disclosed to the PTO and what need not be disclosed. A court is justified in presuming that any such expectation has expired, however, once the attorney has determined to put the information into a draft application.

■ Correspondence from the client to the attorney providing information in connection with the patent application stands on a somewhat different footing. That some, or even all, of the information so conveyed may in some way be disclosed later in publicly filed documents relating to the patent application, does not mean that the client had no expecta-

tion that his *communications* with his counsel would be kept confidential. That the communication contains highly technical matter should not take it out of the domain of communications entitled to protection under the privilege. *E.g., Hydraflow, Inc. v. Enidine Inc.,* 145 F.R.D. 626, 631 (W.D.N.Y. 1993); *Rohm and Haas,* 815 F.Supp. at 797; *Cuno, Inc. v. Pall Corp.,* 121 F.R.D. 198, 202 (E.D.N.Y.1988). Thus, communications and correspondence from a client to his or her attorney which provides information to the attorney relating to the preparation of a patent application is presumed privileged regardless of the information they contain.

■ The distinction drawn here, with respect to the application of the privilege, between the client information found in a draft application and the client information found in the client's communications to his attorney is consistent with another principle of the attorney-client privilege. The privilege "attaches not to the information but to the communication of the information." *In re Grand Jury Subpoenas,* 959 F.2d 1158, 1165 (2d Cir.1992) (quoting *United States v. Cunningham,* 672 F.2d 1064, 1073 n. 8 (2d Cir. 1982), *cert. denied,* 466 U.S. 951, 104 S.Ct. 2154, 80 L.Ed.2d 540 (1984)). "[T]he cloak of the privilege simply protects the communication from discovery, the *underlying information* contained in the communication is not shielded from discovery." *In re Six Grand Jury Witnesses,* 979 F.2d 939, 944 (2d Cir. 1992) (emphasis added), *cert. denied,* 509 U.S. 905, 113 S.Ct. 2997, 125 L.Ed.2d 691 (1993). Written correspondence between a client and his or her attorney, being a communication, is deserving of protection, regardless of the information communicated, if the other elements of the privilege obtain. But once the information received from a client has been distilled and shaped by an attorney for inclusion in the attorney's draft patent application, it has lost its character as a communication from the client; it has become instead discoverable "underlying information." *Id.*

---

5. At oral argument the plaintiffs acknowledged that Dr. Saxholm had worked as an inventor and had been submitting patent applications for over thirty years. The court will infer that Dr. Sax-

holm was aware of how the patent prosecution process worked and that he knew that certain documents became part of a public record.

■ Under the foregoing analysis, then, the draft patent applications are not privileged and must be disclosed.[6] The correspondence from the plaintiffs to their attorneys conveying information or requesting advice regarding patent applications is privileged, and need not be disclosed.

## Category 3

■ The defendants have also moved for the production of certain documents withheld by the plaintiffs which have been categorized as communications with foreign patent agents. Although at one time, prevailing doctrine did not extend the attorney-client privilege to communications with patent agents, foreign or domestic, *e.g., Detection Systems, Inc. v. Pittway Corp.*, 96 F.R.D. 152, 155 (W.D.N.Y.1982), recent opinions disclose that the rule is evolving. *See, e.g., Glaxo, Inc. v. Novopharm Ltd.*, 148 F.R.D. 535, 538–39 (E.D.N.C.1993); *Cuno, Inc. v. Pall Corp.*, 121 F.R.D. 198, 204–05 (E.D.N.Y. 1988). Thus, "the weight of authority holds that the privilege applies to confidential communications with patent agents acting under the authority and control of counsel," *id.* at 204, when the communications relate to the prosecution of a patent application in the United States. *Duplan Corp. v. Deering Milliken, Inc.*, 397 F.Supp. 1146, 1169–70 (D.S.C.1974). As to communications with foreign patent agents in connection with assistance they rendered in the prosecution of patent applications in their own foreign countries, three persuasive opinions in this circuit have adopted a choice-of-law analysis in determining that the privilege issue should be decided by looking to the law of the country where the foreign patent application was filed. *Stryker Corp.*, 145 F.R.D. at 305–06; *Golden Trade, S.r.L. v. Lee Apparel Co.*, 143 F.R.D. 514, 520 (S.D.N.Y.1992); *Detection Systems, Inc.*, 96 F.R.D. at 155–56 (all three cases citing *Duplan Corp., supra*). This court adopts that approach as well in the analysis below.[7]

As a preliminary matter, however, the defendants have argued that the plaintiffs have failed to supply enough detail concerning these communications to determine which privilege law should apply. To meet this concern, the plaintiffs are hereby directed to amend their privilege log where applicable to disclose whether a communication with a foreign patent agent concerned a foreign patent application and to identify with specificity the patent applied for and the country of filing. *Denmark*

■ In support of their position that the Danish attorney-client privilege applies to the communications at issue, the plaintiffs have cited *Burroughs Wellcome Co. v. Barr Laboratories, Inc.*, 143 F.R.D. 611, 621 (E.D.N.C.1992). In *Burroughs,* the party claiming the privilege had submitted to the court an affidavit establishing that under Danish law an attorney-client privilege protects communications between a client and his or her patent attorneys. In that case, however, the plaintiff asserting the privilege had submitted no evidence that the privilege in Denmark protects communications to patent agents or that the plaintiff's patent agents were attorneys, and the court therefore found the privilege inapplicable. The

---

6. The plaintiffs assert that some of the draft patent applications contain "confidential" handwritten notes and changes that were not necessarily included in final submissions to the PTO and thus never became part of the public record. The plaintiffs, however, have not established a basis for finding that any of these handwritten notes is privileged. First, the plaintiffs, have submitted no proof whatever concerning the author of these handwritten notations. Assuming, however, that they are Rolf Saxholm's notations since the document were found in his files, there is no proof that they were ever communicated to his attorney. Finally, the plaintiffs have failed to show that each of these communications was intended to be confidential at the time it was made. For example, a note suggesting language revisions on a draft application would contemplate revelation of the information disclosed in the note, not confidentiality.

7. The plaintiffs have asserted that all of the communications with foreign patent agents that they seek to withhold concern foreign patent applications. They further assert that the foreign patent agents were employed to advise Saxholm and Saxholm's lawyers, the Onsagers firm, on patent prosecution procedures and law in Sweden, Great Britain, Denmark and Canada. The analysis here proceeds on the assumption that both assertions are correct. To the extent that communications with foreign patent agents do not concern foreign patent applications, the analysis here is not applicable.

plaintiffs here have similarly failed to provide evidence that the attorney-client privilege applies to communications with their foreign patent agents regarding Danish patent applications, and this court accordingly finds that their claims of privilege are not substantiated. The plaintiffs are directed to produce all such documents.

### Canada

■ The plaintiffs have also cited *Burroughs* to support their argument that the attorney-client privilege applies to communications with Canadian attorneys such as Scott & Alyen, Saxholm's patent agents in Canada. The *Burroughs* court found that the Canadian attorney-client privilege applies only when the patent agent is also an attorney and is acting in his capacity as such. 143 F.R.D. at 621. Accordingly, communications in the instant case made to Scott & Alyen by Saxholm while they were acting in their capacity as lawyers, are privileged, and any documents reflecting those communications need not be turned over.

### Sweden

■ Plaintiffs cite *Santrade, Ltd. v. General Electric Co.*, 150 F.R.D. 539, 546 (E.D.N.C.1993) to support their assertion that Swedish law protects communications between Saxholm and its patent agent, Patentkontor. The defendants have provided no legal authority to the contrary, arguing instead that, unlike the situation in *Santrade*, the plaintiffs here have submitted no affidavit or other evidence to establish that Swedish law provides the privilege for communications with patent agents. The *Santrade* court expressly held, however, that the Swedish attorney-client privilege applied not only to patent attorneys, but also to patent agents, 150 F.R.D. at 547; in the absence of evidence to the contrary, *Santrade* is sufficient authority. Therefore, any communications between Saxholm and its Swedish patent agents are protected to the extent that those communications reveal client confidences regarding requests for legal advice. These documents need not be produced.

### Great Britain

■ Both of the parties have acknowledged that in Great Britain the attorney-client privilege extends to communications between patent agents and their clients. The defendants contend, however, that the plaintiffs have failed to identify all of the elements of the privilege and to establish that each of those elements exists in the present case. The opinion in *Stryker*, 145 F.R.D. at 306–07, which scrutinizes British statutory law concerning the privilege, provides sufficient detail about the elements of the privilege for this court to make a determination that the communications directly between the patent holder and his British patent agents concerning British patent applications qualify for protection. *Accord, J.T. Eaton & Co., Inc. v. Atlantic Paste & Glue Company*, 1987 WL 17084 (E.D.N.Y. 1987). Accordingly, Saxholm need not produce those communications between itself and its British patent agents which reveal client confidences.

### Category 4

■ The plaintiffs have also listed a number of documents on their privilege log for which they are unable to list a sender and/or recipient. The defendants argue that each of these documents must be produced as the plaintiffs have not established all the elements necessary to claim the privilege. The plaintiffs have argued that they have indirect evidence that each of the disputed communications reveals client confidences. Specifically, the plaintiffs have asserted that these contested communications have the same typeface as documents located in Saxholm's files which were written by Julius Cohen. The plaintiffs, however, have supplied no affidavit or other proofs to support this proposition. Moreover, as discussed above, there appears to the court to be no reason why Mr. Cohen could not have authenticated the documents sufficiently to support their claims of privilege. Having failed to submit such proofs to establish their claims of privilege, those claims are rejected. The documents in this category shall be produced.

## Category 5

This category contains eight documents which Dynal, relying on the descriptions set forth in the privilege log, contends do not concern legal advice. In its argument regarding this category, Dynal adds a ninth document which it contends does not qualify for protection because the information was conveyed on a postcard and therefore was public.

■ Four of the documents concern fees. The general rule is that information concerning a client's identity and fees are not protected by the attorney-client privilege. *United ed States v. Goldberger & Dubin, P.C.*, 935 F.2d 501, 505 (2d Cir.1991) (citations omitted). The plaintiffs have not adduced any special circumstances to convince the court why that rule should not obtain in this case. Accordingly, those four documents shall be produced.

■ The document listed as No. 1848 on the privilege log is identified as a Draft Amendment. As such it must be produced in accordance with the decision above addressing draft application materials. Similarly, document No. 856, the postcard, must be produced as the manner of conveying the information displays no desire to maintain the confidentiality of the information. Document No. 2015 is authored by an attorney and concerns litigation. It is therefore protected by the work-product privilege and need not be produced. Document Nos. 2029 and 1876 are communications between an attorney and his client. On their face, however, the descriptions of these documents in the privilege log do not convey enough information for the court to determine whether the communications reveal client confidences. Accordingly, those documents will be presented to the court for *in camera* inspection within ten days.

## Category 6

■ Finally, the defendants contend that Saxholm has sought to protect many documents written in foreign languages under the attorney-client privilege without first ascertaining that these documents contained privileged client confidences. The defendants further argue that the log is devoid of sufficient information to judge whether the information in the various documents qualifies for protection under the privilege since it contains only conclusory assertions such "letter conveying legal advice" or "requesting legal advice."

The court is sympathetic to the plaintiffs' observation that translating these documents takes a great deal of time and resources. Nevertheless, in order properly to claim the privilege, counsel must be in a position to assess whether the documents they seek to withhold do indeed contain privileged information. Thus, all documents that Saxholm has identified on the privilege log as being in foreign languages and which Dynal has challenged must be translated by February 29, 1996. If not, they will be produced, in untranslated form for the defendants to translate if they so desire. By March 15, 1997, Saxholm is required to amend its privilege log with respect to the foreign language documents that have been translated to set forth the general subject matter of the legal advice requested or conveyed. Thereafter, if the defendants have continuing concern that the documents withheld do not qualify for the privilege, they may make another application to the court for further review.

Consistent with the other rulings in this opinion, documents in this category which were not addressed to or from Saxholm's attorneys (or, in appropriate situations, patent agents) are presumed *not* to be privileged and must be produced because the plaintiffs have not satisfied their burden of proof that these documents qualify for protection. In this regard, mere notes by Harald or Rolf Saxholm on documents which contain no indication they were sent to an attorney are likewise unprotected, and must be produced.

### Dr. Saxholm's conversation with Julian Cohen

■ On January 20, 1994, Dr. Saxholm met with Julian Cohen, his attorney, in the presence of a third party, Mr. Viggo Trogsdahl. Dynal contends that Mr. Trogsdahl's presence acts as a waiver of any privilege that Saxholm had regarding this conversation. Saxholm counters that Mr. Trogsdahl

is an advisor to Dr. Saxholm and an uncompensated agent of Saxholm AS.

██ "It is well established ... that the privilege is not available when the communication is uttered in the presence of a third party whose presence serves no necessary purpose to the furtherance of the attorney client relationship." *United States v. Gotti*, 771 F.Supp. 535, 542 (E.D.N.Y.1991). The party asserting the privilege has the burden of proving the necessity of any third party's presence during the communications for which protection is sought. *Id.* Saxholm has not carried that burden. The argument that Mr. Trogsdahl is a de facto employee of Saxholm AS is not supported by the facts before this court. Plaintiffs argue, but supply no evidence, that Mr. Trogsdahl cannot be compensated by Saxholm under Norwegian corporate law. As the defendants have pointed out, however, Saxholm appears to have compensated at least one other individual for employment services. Nor have the plaintiffs submitted any evidence of the services Mr. Trogsdahl provides to Saxholm AS other than an argument that he is a personal advisor and an investigator. There is no evidence that he served any function at the meeting. Accordingly, the court finds that the plaintiffs have not established that the conversation in question was privileged, and testimony about it must be given.

